[No. 16063. Department One. January 24, 1921.]

JOSEPH SUSSMAN *et al., Respondents,* v. MITSUI & COMPANY, LIMITED, *Appellant.*[1]

SALES (154)—DAMAGES (77)—MEASURE—FAILURE TO DELIVER PROPERTY. In an action to recover damages for breach of an executory contract to sell pig iron, in failing to furnish the commodity contracted for, after the plaintiff refused to accept material offered, the measure of damages is the sum paid on the contract and the loss of profits that would have been made upon a resale.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 26, 1920, upon the verdict of a jury in favor of the plaintiff, in an action for breach of contract of sale. Affirmed.

*Trefethen & Findley,* for appellant.

*Jones, Riddell & Brackett,* for respondents.

[1]Reported in 195 Pac. 3.

MACKINTOSH, J.—Action for damages for breach of contract for failure to furnish pig iron of the specified quality.

Appellant was the owner of about three hundred and fifty tons of "remelted pig iron made by electrical process from scrap steel," which was sold to the respondents through one Dillon. Respondents bought the material for the purpose of re-sale in Portland, Oregon. Upon inspection by the ultimate purchaser, the material was discovered to be of inferior quality.

The case, in the main, presents only questions of fact, which were tried to a jury. The statement of facts and abstracts are voluminous, and after a thorough examination of them, we deem it unnecessary to set out the facts with any detail in this opinion.

There are three principal assignments of error. First, it is claimed that no contract was executed between the appellant and respondents, that the contract of sale sued on was one between the respondents and Dillon, and that Dillon executed it in his individual capacity, and not as appellant's agent. This is purely a question of fact which was submitted to the jury upon proper instructions, under evidence which was more than sufficient to prove that the sale actually took place between the appellant and respondents through the instrumentality of Dillon, acting as appellant's agent.

It is next claimed, (a) that the contract was not breached for the reason that the material shipped was of the same quality and analysis as called for in the contract; and (b) that, even if the material was not according to the sample, the respondents are estopped to raise the issue, for the reason that the contract was completely executed and that, prior to the shipment of any material, respondents were advised as to the character of the material, and with that knowledge instruct-

ed the appellant to ship it. This also presents a question of fact merely, on which there was evidence from which the jury could properly arrive at the conclusion that the contract had been breached. The material had been sold "as per sample submitted and the analysis taken of the iron, which is as follows. . . ." The evidence is almost nearly conclusive that the material did not comply with the sample. There is some question raised as to whether the sample which the respondents had in their possession before they entered into the contract was received from the appellant. Although the piece of material passed through several hands, there was evidence before the jury which would justify it in determining that the sample was one delivered by the appellant from material in its possession.

Arguing the question of estoppel, it is the appellant's position that the respondent, having accepted the first three carloads of material, could not thereafter urge that the contract had been broken. The jury, however, was entitled to believe from the testimony that it had been agreed between the parties, a question having arisen as to the quality of the first shipment, that, nevertheless, the entire shipment should be sent on to the ultimate purchaser in Portland, the respondents agreeing they would not raise any question as to the character of the material unless their purchaser did so. The jury was justified in believing that the parties had mutually agreed that the whole shipment might be sent forward, the respondents relying upon it all being up to sample. The ultimate purchaser immediately rejected the material. If this was the understanding, it could not be the basis for estoppel or waiver of the conditions of the contract.

The next claim of the appellant is that, even if the contract was breached, the respondents failed to estab-

lish and prove such damages as were recoverable. The damages claimed were the amount of deposit paid by the respondents at the time they entered into the contract, the amount which they paid for the three cars delivered, less the amount which they received for the sale of these three carloads when the appellant refused to receive them back, and for loss of profits which the respondents would have made on their resale in Portland. The appellant claims that these items of damage indicated that the respondents are suing for breach of warranty, and that in the action they are trying to recover upon the theory of rescission. The action was not one for breach of warranty or rescission, but for damages for breach of contract in failing to furnish the commodity which was contracted for. This was not a contract which had been executed, and under which the material had been received and retained by the purchaser and who was suing for damages for breach of warranty, nor was it a contract which had been executed and where the material had been returned by the respondents, who thus rescinded the contract. This was an executory contract where the respondents had refused to accept the material as not complying with the contract and are suing for damages for failure to furnish the proper material.

The authorities distinguishing the measure of damage in these different forms of action are numerous, but the distinction is probably best made in the note to our case of *Houser & Haines Mfg. Co. v. McKay,* 53 Wash. 337, 101 Pac. 894, contained in 27 L. R. A. (N. S.) 925, where the following language occurs:

"It is well settled that, where a purchaser refuses to receive property tendered to him under an executory contract of purchase, on the ground that such property does not comply with the warranty or with the contract in general, if the seller fails to tender property that

does comply with the contract, the purchaser may recover whatever he has paid upon the purchase price, and also damages for the breach by the seller of his contract to furnish property of a certain description. Munford v. Kevil, 109 Ky. 246, 58 S. W. 703; Ideal Wrench Co. v. Garvin Mach. Co., 65 App. Div. 235, 72 N. Y. Supp. 662, affirmed without opinion in 181 N. Y. 573, 74 N. E. 1118; Sklarsky v. Marine Mfg. & Supply Co., 33 Misc. 761, 67 N. Y. Supp. 897; Rhea Thielens Implement Co. v. Racine Malleable & Wrought Iron Co., 89 Ill. App. 463; Azemar v. Casella, L. R. 2 C. P. 431, 23 Eng. Rul. Cas. 441.

"It is not intended to consider this question at length, and no attempt to gather the cases considering the same has been made. The question involves an entirely different principle of law than that involved where the purchaser has rescinded or repudiated the contract of purchase for breach of warranty, as in such a case he terminates the contract, and, having terminated the contract, he could not assume the inconsistent position of also seeking damages for its breach, such damages being entirely different from damages which, under special circumstances, may be incident to the rescission of the contract. Where, however, as in the last-cited cases, the purchaser does not rescind the contract, but merely refuses to receive the property tendered by the seller as complying therewith, he does not thereby terminate the contract, and may maintain an action to recover whatever he had paid thereon, as well as for damages growing out of the breach.

"This distinction was made in Punteney-Mitchell Mfg. Co. v. T. G. Northwall Co., 66 Neb. 5, 91 N. W. 863, wherein on this point the court said: 'But it seems to us that in this argument there is a failure to distinguish between a refusal to accept, or a return or offer to return goods not corresponding to the warranty, and a rescission of the contract of sale, and between an action for breach of warranty and one for breach of contract. Such failure renders the argument confusing. In this case, there was a contract between the parties whereby the plaintiff was bound to deliver to the defendant goods warranted to be of a certain

quality. According to the finding of the jury, as performance of its part of the contract, the plaintiff tendered goods of an inferior quality. The defendant had the option to accept them and rely on the warranty, or to refuse them. Its election to adopt the latter course would not necessarily result in a rescission of the contract, nor in a release of the plaintiff from its obligation to perform its part of the contract according to its terms. On its failure thus to perform its part of the contract, there resulted a breach of contract, independent of a breach of warranty, for which it is answerable in such damages as would reasonably be in contemplation of the parties as a result of such breach when the contract was made.'

"On the same subject in Tompkins v. J. & R. Lamb, 121 App. Div. 366, 106 N. Y. Supp. 6, affirmed without opinion in 195 N. Y. 518, 88 N. E. 1133, it was said: 'While there are some *dicta* in the books which give to a vendee, upon an executory sale, the choice between two remedies only, either a breach of warranty, if one exist, or an action upon a rescinded contract, the law is well settled that there is a third right of action which such a vendee may have, to wit, an action for a breach of the contract to furnish the property contracted for. In that case, the property attempted to be furnished is rejected as not in accordance with the contract. In an action as upon a rescinded contract, the vendee can recover only the purchase price paid; in an action, however, as for a breach of contract, the vendee is entitled to recover the value of his contract, which includes not only the purchase price paid, but also the worth of his contract over and beyond such purchase price.' "

See, also, *First Church etc. v. Southern S. & C. Co.,* 76 Wash. 367, 136 Pac. 127; *Sevier v. Hopkins,* 101 Wash. 404, 172 Pac. 550; *Harrild v. Spokane School Dist.,* 112 Wash. 266, 192 Pac. 1. This rule distinguishes the cases: *Baker v. Robbins,* 51 Wash. 467, 99 Pac. 1; *Northern Mercantile Co. v. Schultz,* 56 Wash. 393, 105 Pac. 850; *Dickinson Fire etc. Co. v. Crowe & Co.,* 63 Wash. 550, 115 Pac. 1087; *Noble v. Olympia*

*Brewing Co.,* 64 Wash. 461, 117 Pac. 241, 36 L. R. A. (N. S.) 467; *Blake-Rutherford Farms Co. v. Holt Mfg. Co.,* 70 Wash. 192, 126 Pac. 418; *Thompson v. Rhodehamel,* 71 Wash. 24, 127 Pac. 572; *Holt Mfg. Co. v. Strachan,* 77 Wash. 380, 137 Pac. 1006; *Connor & Groger, Inc. v. Forest Mills etc.,* 108 Wash. 468, 184 Pac. 319.

Exceptions were taken to the refusal of the court to give certain requested instructions and to the giving of certain instructions and to the admission and exclusion of evidence. We find no sufficient merit in any of these exceptions to warrant reversing the case. If, in the narrow and technical sense, some minor errors may have crept into the trial of this case, which was protracted and involved and called for so much expert testimony, not one of them was prejudicial or sufficiently important to entitle appellant to a reversal. The judgment is affirmed.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.