[No. 20210.   Department One.   June 3, 1927.]

## L. V. WILSON, *Respondent*, v. MILLER FLOUR MILLS, *Appellant*.[1]

[1] CONTRACTS (80)—PARTIES — PRIVITY — AGREEMENTS FOR BENEFIT
OF THIRD PERSONS.   Privity of contract to sustain an action by
a farmer against the seller of defective seed wheat, is suf-
ficiently shown by evidence that the seed was procured by a
dealer, who notified the seller that it was wanted by a farmer
for seeding, agreed to guarantee payment, and did .pay for it,
charging the same to the farmer.

[2] SALES (161, 164-1) — WARRANTY — DEFENSES — EVIDENCE — SUF-
FICIENCY.   In an action upon an implied warranty, whether
plaintiff destroyed the germinating quality of seed wheat by
treatment for smut, is a question for the jury, where plaintiff
testified that he followed approved methods and that other seed
wheat treated at the same time in the same manner germinated.

[3] EVIDENCE (111)— DOCUMENTARY EVIDENCE — WEATHER REPORTS.
Upon a claim that a severe storm affected the germinating of
seed wheat recently sown, the testimony of the weather ob-
server, some distance away, as to the severity of the storm, is
admissible in rebuttal, where there was other evidence that the
storm was general throughout the surrounding country with
the same rainfall in one place as in another.

[4] WITNESSES (74)—CROSS-EXAMINATION—SCOPE AND EXTENT.   Upon
an issue as to whether wheat was sold as seed wheat by the
defendant, who denied such a sale, but admitted testing it on
the possibility of sales for seeding, it is not error to allow cross-
examination tending to show that defendant had not complied
with the requirements of Rem. Comp. Stat., § 2814, as to the
labeling of seed packages; since it had a bearing on defendant's
good faith.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered March 1, 1926,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action on contract.   Affirmed.

*McAulay & Freece*, for appellants.

*Joseph C. Cheney*, for respondent.

¹Reported in 256 Pac. 777.

Fullerton, J.—In the year 1925, the respondent, Wilson, was farming a tract of land located near Toppenish, in Yakima county. Desiring some wheat of a particular kind for seeding purposes, he went to one Asbury, a local dealer at Toppenish, to purchase it, telling him that he desired one hundred bushels. The dealer did not have wheat of the kind wanted, but told the respondent that he thought he could procure it for him. The dealer then called the appellant, Miller Flour Mills, who was doing business at the city of Yakima some twenty-two miles distant, by telephone, and inquired whether it had wheat of the kind desired, and, if so, at what price it could be purchased. He was informed that the appellant did have the wheat, and was given a price, delivered at the appellant's place of business, of $2.30 per bushel. The dealer then inquired of the respondent if he desired the wheat, and being told that he did, the dealer then told the appellant that he would send a truck for it. Some conversation then occurred between the person representing the appellant and the dealer as to who was to pay for the wheat, when the dealer told the appellant that he would guarantee the purchase price. A truck was then sent for the wheat, with an order reading:

"Please deliver to J. Compton 100 bushels of Jenkins Club seed wheat as per our phone conversation this P. M. Mail me your invoice and I will send you check by return mail."

The wheat was delivered to the truck driver, and a bill for it mailed to the dealer, who sent his check in payment. The wheat was charged by the dealer to the respondent on the respondent's general account with the dealer, which account the respondent afterwards paid, in payments of varying amounts. The wheat was charged to the respondent on the dealer's books at

$2.75 per bushel; the price charged representing the price paid for the wheat, the cost of the hauling, and a commission of twenty-five cents per bushel.

On receiving the wheat, the respondent seeded some sixty-three acres of his land with it. The wheat, however, did not germinate and grow as it should, less than ten per cent of it coming through the ground. The stand was so deficient that the respondent felt compelled to reseed the ground to another form of crop, and did reseed it to barley. In this action, the respondent sought to recover from the appellant the loss suffered by him because of the defective character of the wheat. He laid his damages in the sum of $2,179.25. The cause was tried to a jury, who returned a verdict for him in the sum of $1,423.25, and for this sum a judgment was entered in his favor against the appellant.

At appropriate times during the progress of the cause, the appellant interposed challenges to the sufficiency of the evidence to justify a verdict or judgment against it. These several challenges the trial court overruled, and the first assignments of error discussed in this court question the correctness of these rulings.

[1] The first of these objections is that the evidence failed to show any privity of contract between the appellant and the respondent; the more particular contention being that the appellant did not know the respondent in the transaction; that it sold the wheat to the dealer mentioned without warranty or guarantee of any kind, and without even knowing the purposes for which the dealer desired it. But, as we read the record, there was a decided conflict in the evidence on the question. The dealer testified that he not only described the character and kind of wheat wanted, but told the appellant that it was wanted by a farmer for seeding purposes, and at no time said that he wanted

to make a purchase on his own account. His statement, we think, has some support in the circumstance before mentioned, which appears in the testimony of the appellant's representative who talked over the telephone with the dealer. He testified that, during the course of the conversation, he inquired of the dealer who was to pay for the wheat. Seemingly, such an inquiry would have been unnecessary had it been understood that the sale was to the dealer. There being evidence supporting the respondent's contention, its weight and sufficiency was for the jury.

[2] A further contention under this head is that the respondent himself destroyed the germinating quality of the wheat by his treatment of it preparatory to sowing. It appears that the respondent, in treating the wheat to prevent smut, used a formaldehyde solution. The evidence on the part of the appellant tended to show that there is always a danger attendant upon this form of treatment; that if too strong a solution is used, or if the wheat is allowed to stand too long in the solution, or if the wheat is not sown within a short time after the treatment, the germinating quality of the wheat will be destroyed. But the evidence on the part of the respondent is to the effect that, to treat wheat before seeding with this solution, is approved by the best standards, and that with care there are no attendant dangers. His testimony is further that he followed the approved methods in treating the wheat. It appeared, furthermore, that another variety of wheat treated at the same time and in the same manner germinated and grew. It would seem manifest, therefore, that whether the treatment of the wheat destroyed its germinating quality was at best for the jury; that it presents no question of law for the court. The case of *Meehan v. Ingalls,* 91 Wash. 86, 157 Pac. 217, Ann. Cas. 1917B 71, upon which the appellant relies in support

of its contention, is not in point. The case need not be reviewed at length. It was undisputed that the purchasers had so maltreated the seeds purchased as to destroy their germinating quality, and it was held that such a showing, with no other showing than the fact that the seeds did not grow, was not sufficient to support a verdict to the effect that the seeds were worthless when purchased. But such is not the situation here. There was no proof of maltreatment. The appellant relied upon a showing that seed wheat treated with this character of solution after approved methods sometimes failed to grow. But, at best, its evidence only made a question for the jury.

[3] Of the errors assigned which are thought to require a new trial, the first is the admission of the testimony of a Mrs. Spangler, a government weather observer, at Yakima. The appellant had offered evidence tending to show that a severe rain had fallen between the time the wheat was sown and the germinating period of the wheat, which caused a crust to form on the seeded ground so dense as to prevent the wheat from growing through it. To rebut this testimony, the respondent called the observer, and she was permitted to testify as to the quantity of the rainfall during the times named at her station. As the station was some distance from the place of the farm, and as the observer testified that rain at times fell at the one place when it did not at the other, it is argued that her testimony was inadmissible. But the matter missing from her testimony was supplied by other witnesses. It was shown that the rain was general throughout the surrounding country, and that about the same quantity fell at the one place as fell at the other. Clearly, in the light of the entire record, no error was committed in the admission of the evidence.

[4]  The wheat sold to the respondent was taken from a car load which the appellant had imported from the state of Idaho.  The president of the appellant, in his direct examination, testified that his company was not engaged in the seed business and did not purchase the wheat for the purpose of selling it as seed wheat. He further testified, however, that when the car was received, he took samples from different parts of the car and tested it to ascertain its germinating qualities. In his cross-examination, he was questioned as to his purpose in making the test, and answered that he anticipated that some of it would be sold to farmers who "would possibly use it for seed," and his purpose was to ascertain whether it was suitable for that purpose. He was then asked whether his company had complied with the state law relative to the sale of seed wheat (Rem. Comp. Stat., § 2814) [P. C. § 103], that is to say, he was asked whether the packages containing the wheat sold were marked in plain, legible type with the commonly accepted name of the seed; whether they were marked with the approximate percentage of purity; whether they were marked with the germination test and the date of the test; whether they were marked with the name of the state in which the wheat was grown; and whether they were marked with the name of the seedsman who grew it; all of which questions he answered in the negative.  The questions were permitted over the objection of the appellant, and it is urged in this court that the cross-examination was not germane to the issues, and was highly prejudicial to the appellant.  But we cannot take the view that the cross-examination was foreign to the issue. There was direct evidence, evidence which the jury believed, that the wheat was sold as seed wheat, and the evidence to which objection was made had some bear-

ing upon the good faith of the appellant in making the sale. It is not altogether unreasonable to draw therefrom the inference that, had the matters the statute requires to be placed upon the containers of the wheat been placed thereon, it would not have been conducive to a sale.

It is true that this court has adopted the so-called American rule relative to the cross-examination of witnesses, but we have not so narrowed it as to hold that the cross-examination must be confined to the questions asked on the direct examination. On the contrary, we have said that when, in the direct examination, "a general subject is unfolded, the cross-examination may develop and explore the various phases of that subject." *Bishop v. Averill,* 17 Wash. 209, 49 Pac. 237, 50 Pac. 1024. In *Coey v. Darknell,* 25 Wash. 518, 65 Pac. 760, we held, in an action upon a promissory note, where there was an issue as to whether the note had been partially paid by the delivery of a crop of wheat, that a witness testifying to the delivery might be questioned on cross-examination as to the condition of the crop, notwithstanding the witness had not been questioned on the subject in his direct examination. In *Grant v. Spokane Traction Co.,* 47 Wash. 112, 91 Pac. 553, where the action was for personal injuries, we used this language:

"When the plaintiff B. M. Grant was a witness, it developed upon his direct examination that he was commonly called 'doctor'. He also testified that, when his wife was injured, the conductor of the car asked him his name and, in reply thereto the witness handed the conductor a small handbill containing his name, picture, location of his office, and an advertisement of his methods of treatment. On cross-examination counsel for defendant was permitted to ask the witness if he was a licensed practitioner, and if he had prescribed for his wife; and counsel for defendant was

also permitted to introduce the handbill above mentioned in evidence, and question the witness concerning the same. We see no impropriety in this cross-examination. The jury was entitled to know who the witness was and the character of his business. Plaintiff contends that the object of the examination was to prejudice the witness before the jury; but we find nothing either in the examination or in the substance of the evidence in the record to justify a reversal upon this ground alone. There was certainly no abuse of discretion on the part of the trial court in respect to the cross-examination of this witness.''

So in the cause at bar, we cannot think the evidence in question was so far without the realm of legitimate cross-examination, or so far a departure from the issues, as to be reversible error.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FRENCH, JJ., concur.