[No. 21999. Department One. February 3, 1930.]

JOHN G. HARTMAN et al., *Respondents*, v. BARNES GRAIN & FEED COMPANY, *Appellant*.[1]

[1]Reported in 284 Pac. 754.

*Joseph C. Cheney* and *Elwood Hutcheson,* for appellant.

*Snively & Bounds,* for respondents.

PARKER, J.—The plaintiffs, Hartman and Kunkel, who at the time in question were copartners operating their farm in Yakima county, commenced this action in the superior court for that county seeking recovery of damages which they claim to have suffered as the result of the defendant feed company's selling and delivering to them a quantity of seed for planting upon their farm, which the feed company represented and warranted to them to be good alfalfa seed, and which proved, after being planted by them upon their farm, not to be alfalfa seed, but seed which produced a worthless crop known as "yellow trefoil."

The feed company, in addition to denials other than that it sold alfalfa seed to Hartman and Kunkel, as an affirmative defense alleged that, at the time of the sale, it

" . . . specifically refused to warrant said seed, expressly or impliedly, as to name, description, variety, purity or germinative qualities, and that said Hartman, upon purchasing said seed, purchased it upon the condition that the defendant would not warrant said seed, and with full understanding to that effect."

A trial upon the merits in the superior court, sitting with a jury, resulted in a verdict awarding to Hartman and Kunkel damages against the feed company in the sum of $700. Upon disposing of the feed company's motion for a new trial, the trial judge, being of the

opinion that the verdict was excessive, required Hartman and Kunkel to consent to a reduced award of $407, or suffer a new trial. They so consenting, final judgment was accordingly rendered in their favor against the feed company, from which it has appealed to this court.

The feed company has, since some time prior to the times here in question, been a retail dealer in feed and seed in the city of Yakima. Hartman and Kunkel, since some time prior to the times in question, have, as copartners, owned and operated a farm in Yakima county. In March, 1927, Hartman went to the feed company's place of business to buy a quantity of alfalfa seed to plant upon their farm, and made their wants in that behalf known to Pitcher, vice-president of the feed company, who then waited upon Hartman and made to him the seed sale here in question. A version of what was then said and done between Hartman and Pitcher is given in the testimony of Hartman, as follows:

"Q. Now, in 1927, March, did you attempt to buy alfalfa seed? A. Yes. Q. Did you go to Barnes Grain & Feed Co.? A. Yes, sir. Q. Who did you see there? A. Mr. Pitcher. Q. What did he say to you and what did you say to him? A. I asked him for alfalfa seed, and he said, 'There is some in the bin,' and I looked at it, and I asked him if it was any good, it looked kind of small to me; I thought it was seed raised on poor ground and made small seed, and that made me think it wasn't any good. Q. What did you say, not what you thought? A. I said, 'Is it any good?' And he said, 'Just as good as any.' I says, 'Well, if it's good seed I'll take a sack,' and I asked what the sack weighed. He said, 'Oh, from a hundred to a hundred and fifty pounds.' I says, 'I will take a big sack,' and he took the sack with the rest of the stuff I bought and threw it on my truck. Q. Did he ask you where the ranch was, where it was going? A. Yes, we talked a

little while about where our ranch was, and I told him all about it. The old Eschbach place up in the Ahtanum. Q. Did he say whether he knew it or not? A. He said he knew the place."

Pitcher, by his testimony, denied the making of any statements to Hartman as to the kind or quality of the seed, and he also testified that he then expressly disclaimed to Hartman, in behalf of the feed company, any warranty of the seed. Pitcher then gave to Hartman a sales slip evidencing the sale and payment therefor.

There was no printing or writing on the sales slip evidencing any disclaimer of warranty as to kind or quality of the seed. Nor, according to the testimony of Hartman, was there any printing or writing on or attached to the sack evidencing any disclaimer of warranty as to kind or quality of the seed therein. There was printed on the sack these words: "Hardy Utah Beehive Brand Alfalfa, Origin Guaranteed. J. G. Peppard Seed Co., Kansas City, Missouri, U. S. A." There was also some other printed matter on the sack stating the manner and place of the origin of the seed. Pitcher testified that there was attached to the sack a tag on which was printed the following:

"Barnes Grain & Feed Co. gives no warranty, express or implied, as to description, quality, productiveness or any other matter, of any seeds it sends out, and will be in no way responsible for the crop."

Hartman testified positively to the contrary; that is, that there was no such tag or printing attached to or upon the sack.

Two or three days later, another smaller quantity of the same kind of seed, contained in the same kind of a sack, about half full, was purchased by Hartman from the feed company. This and the prior purchase were, in effect, one transaction in so far as evidence

of guaranty and disclaimer of guaranty as to kind and quality are concerned.

There was introduced in behalf of the feed company evidence tending to show that there was an established custom in Yakima county and the state of Washington, known generally in Yakima county, that seed dealers did not warrant seed sold by them as to kind or quality. The purpose of this evidence was to lend support to Pitcher's testimony as to express disclaimer of warranty, and also as tending to negative any implied warranty as to kind or quality of the seed on the part of the feed company.

Hartman and Kunkel planted the seed on their farm under such circumstances as to the nature of the soil, preparation thereof and after care by irrigation, that they should and would have, in all probability, produced thereby a good crop of alfalfa if the seed had been good alfalfa seed; but it produced a worthless crop consisting almost wholly of "yellow trefoil," resulting in damage and no benefit to Hartman and Kunkel. While we have noticed Hartman looked at a sample of the seed when he made the purchase, the testimony of experts and other experienced persons was, in substance, that alfalfa seed and "yellow trefoil" seed can be distinguishable only by a very careful inspection by an experienced person, and even then the distinction can only be made with certainty by a microscopic examination of the seed with a suitable instrument.

The case was prosecuted in behalf of Hartman and Kunkel upon the theory of express warranty by Pitcher for the feed company as to the kind and quality of the seed; that is, that it was alfalfa seed and good alfalfa seed, Pitcher knowing the purpose for which it was being purchased by Hartman; and, in the alternative, upon the theory that there was at least an im-

plied warranty by Pitcher for the feed company, to the same effect. The trial judge, by his very carefully prepared instructions, presented the case to the jury upon these theories in the alternative, in this order.

It is contended in behalf of the feed company that the trial judge erred to its prejudice in giving instructions submitting to the jury the question of express warranty by the feed company as to the kind or quality of the seed; and, further, that, instead of submitting that question to the jury, it should have been withdrawn from the consideration of the jury for want of evidence to support a finding of express warranty. It seems to us that Hartman's testimony, above noticed, as to what occurred and was said between him and Pitcher at the time of the sale of the seed would warrant the jury in concluding, if it believed his testimony, that there was, in effect, an express warranty then made by Pitcher for the feed company that the seed was alfalfa seed and that it was good alfalfa seed. The applicable rule seems to us to be well stated in the text of 24 R. C. L. 199, as follows:

"The better view, however, seems to be that in the sale of seed necessarily intended for planting and which is totally unfit for seed if not fertile, a warranty will ordinarily be implied that it is fit for such purpose, that is, that it is reasonably fertile seed and will germinate if properly planted, and that it is reasonably free from impurities and noxious weed seeds; and affirmations by the seller that seed sold is good seed or the like may, like other affirmations as to quality or the like, constitute what are generally classified as express warranties."

In a note to be found in 37 L. R. A. (N. S.) at page 80, the editor makes this applicable observation:

"It has been held that in a sale of seed for planting or sowing, where the sale is by description, the doctrine of implied warranty does not apply, but the doctrine of

express warranty does, and it is said that 'no particular form of expression or words is necessary to make an express contract of warranty. The word "warranty" is not necessary to it. An affirmation of the fact as to the kind or quality of an article offered for sale, of which the vendee is ignorant, but upon which he relies in purchasing such article, is as much a binding contract of warranty as a formal agreement using the plainest and most unequivocal language on the subject.' *Hoffman v. Dixon,* 105 Wis. 315, 81 N. W. 491, 76 Am. St. 916.''

We conclude that the trial judge did not err in submitting to the jury the disputed questions of fact for determination as to whether or not there was an express warranty.

 It is also contended in behalf of the feed company that the evidence does not support a finding of an implied warranty of the seed as to kind or quality, and that the trial court should have also taken that question from the consideration of the jury instead of submitting it in the alternative to the jury by instructions. The argument is principally that the feed company's proof conclusively negatives any implied warranty on its part as to kind or quality of the seed. This proof consists of Pitcher's testimony, above noticed, and other testimony, tending to show the attaching of a tag with a disclaimer printed thereon as above noticed, and also a general custom of dealers to make their sales accompanied by such a disclaimer.

But the trouble with this contention is that this proof introduced in behalf of the feed company is all in conflict with evidence to the contrary introduced in behalf of Hartman and Kunkel. Thus, it seems to us, there was ample evidence in warranting the jury in concluding that there were facts proven giving rise to an implied warranty that the seed was not only alfalfa seed, but also good alfalfa seed. *Kelly v. Lum,*

75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N. S.) 1151; *Jolly v. Blackwell & Co.,* 122 Wash. 620, 211 Pac. 748; *Wapato Fruit & Cold Storage Co. v. Denham,* 126 Wash. 676, 219 Pac. 30; *Wilson v. Miller Flour Mills,* 144 Wash. 60, 256 Pac. 777; see also note in L. R. A. 1916C, p. 1012. We conclude that the trial judge did not err in submitting to the jury in the alternative the disputed questions of fact for determination as to whether or not there was an implied warranty as to the kind and quality of the seed made by Pitcher to Hartman at the time of the sale.

■ Contention is made in behalf of the feed company that the trial judge erred to its prejudice in refusing to permit it to file an amended affirmative answer at the beginning of the trial. It is somewhat difficult to find in the record any specific ruling of the court denying this request. It is plain, however, that the court did rule, in substance, that the tendered amended answer did not allege any new facts which were not provable in support of contentions which the feed company would be privileged to make under its original affirmative answer. Later rulings of the court were in harmony with this announced view of the court. Plainly, there was nothing prejudicial to the rights of the feed company in this occurrence.

Some other contentions are made in behalf of the feed company, all of which we have carefully examined. They relate to trial rulings of the court touching the admissibility of evidence and to instructions given and refused. We think they are so wanting in substantial merit as not to call for further discussion. While the amount involved is comparatively small, the trial was of unusual length, and the evidence, taking a wide range, became voluminous, there being over four hundred pages of typewritten testimony, accompanied by some thirty-five exhibits. A number of the trial

rulings claimed to be erroneous, if looked at wholly independent of other portions of the record, might be held to be technically erroneous, as claimed; but all such were, we think, plainly cured by subsequent action of either the parties or the court. The judgment ultimately awarded by the trial court, it seems plain to us, is supported by a record free from prejudicial error, and is well supported by evidence.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.