[No. 26116. Department One. October 1, 1936.]

CRANDALL ENGINEERING COMPANY, *Appellant,* v. WIN-SLOW MARINE RAILWAY & SHIPBUILDING COMPANY, *Respondent.*[1]

[1]Reported in 61 P. (2d) 136.

*Congdon & Jessup,* for appellant.

*Cosgrove & Terhune,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover the balance of the unpaid purchase price of certain machinery sold to defendant. In its answer, defendant set up a counterclaim for damages resulting from the collapse of a part of the machinery while in

operation. Issues were joined, and trial was had before the court, without a jury, upon a stipulated statement of facts. The court found that the damages to defendant equalled the amount of the unpaid balance of the original purchase price, and entered judgment dismissing plaintiff's action. Plaintiff has appealed.

The facts, as shown by the stipulation and by the court's findings based thereon, are as follows:

· Respondent is a corporation organized under the laws of Washington, with its principal place of business in the city of Seattle. Appellant is a foreign corporation not engaged in, or doing, business in this state.

In 1902, respondent purchased from appellant a *cast-iron main gear* for its railway dry dock hauling machine, used in the operation of its business. In 1931, two of the spokes in the main gear cracked, and respondent thereupon negotiated, in writing, with the appellant for the purchase of a new gear to be made of *semisteel,* which would be of greater strength than the old gear made of cast iron. Nothing, however, came of those negotiations at that time.

In August, 1933, respondent purchased from appellant twelve hundred feet of *cast-steel* railway chain and four alloy *cast-steel* chain wheels. The purchase was evidenced by the written offer of the appellant and a telegraphic acceptance by respondent. The offer contained a warranty, the same in form as that hereinafter set forth.

On October 4, 1933, appellant, in reply to an inquiry, offered to sell and deliver to respondent one *semisteel machine-moulded gear* and one *semisteel machine-moulded pinion* for respondent's dry dock hauling machine. The offer was accepted by respondent by letter of October 9, 1933.

The total purchase price of the cast-steel chains and wheels and the semisteel gear and pinion, covered by the two contracts, amounted to $9,737.68.

In each of appellant's two offers for the sale of this machinery and equipment was a warranty clause reading as follows:

"We warrant the goods above quoted to be free from defects in material and workmanship under normal use and service; our obligation under this warranty being limited to replacing at our works any part or parts thereof which shall, within 90 days after delivery thereof to the original purchaser, be demonstrated to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied. We neither assume or authorize any other person to assume for us, any other liability in connection with the said goods."

In this case, we are concerned only with the contract and warranty with reference to the gear and pinion.

Upon delivery of the gear and pinion in January, 1934, respondent, in reliance upon the contract and under the belief that the two appliances were of semisteel, and having no knowledge to the contrary, installed the same as parts of its dry dock hauling machine. On February 2, 1934, the gear, while in operation, broke, and, upon a chemical test being made, respondent for the first time discovered that the gear was made of cast iron instead of semisteel.

Respondent shortly thereafter wrote to the appellant notifying it of the occurrence and the subsequent tests made, advising it that it would be necessary to replace the wheel, also that serious loss had been entailed by reason of respondent's inability to accept certain jobs, and asking appellant what it proposed to do in the matter. Appellant, in its written response, expressed amazement that the gear had been found to be of cast iron and stated that for years its gear cast-

ings had been made by the leading and most reliable gear foundry in the country. Appellant further stated that it had "certainly agreed" to furnish a *semisteel* gear and that it intended to fulfill its agreement and *replace* the gear. It also requested that the test pieces be forwarded to it for analysis by the Massachusetts Institute of Technology. Pursuant to this correspondence, the test pieces were shipped to appellant, and thereafter a chemical test was made by the above institute, with the result that the gear was found to be of gray iron instead of semisteel.

Appellant thereupon shipped to the respondent a new semisteel gear in replacement of the broken gear. Upon receipt thereof, respondent installed the new gear in its dry dock hauling machine. The reasonable cost of labor and material expended by respondent in dismantling the broken gear, installing a temporary gear, and subsequently installing the new gear, amounted to $1,632.34. From the total purchase price of the machinery and equipment covered by the two contracts, respondent deducted the amount of expense incurred and remitted the balance to the appellant. Up to this time, respondent had made no claim for damages. Appellant declined to accept the remittance as full settlement and thereupon brought this action to recover the amount of deductions made by respondent.

The question to be determined by us can best be presented by a statement of the respective contentions of the parties. Appellant presents the question thus:

"Does a contract of sale by description, wherein the seller gives a warranty that the goods quoted will be free from 'defects in material and workmanship' and limits its liability to replacing the goods, disclaiming all other warranties 'expressed or implied' and refusing to assume 'any other liability in connection with said goods,' limit the remedy of the buyer to a replacement, where the seller in assumed compliance

with the contract of sale delivers a grey iron gear instead of a semisteel gear as called for in the contract.''

Appellant answers this question in the affirmative, its contention being that respondent's relief is limited to a replacement of the gear.

Respondent's contention is:

''That appellant's obligation to deliver the specific article agreed to be sold and delivered was a condition precedent to the obligation of respondent to accept and pay for the same, and that the delivery of a different article was a breach of a condition precedent for which it was entitled to recoup the damages resulting from such breach of contract, both under the general law relating to contracts and also under Sec. 11 of the Uniform Sales Act of the State of Washington, and that the limitation as to warranties in the contract and waiver of any other warranties, applied only to the identical article agreed to be furnished, and when and if delivered, and that it had no force or effect on account of the delivery of an entirely different article.''

Stated in somewhat general terms, the issue between the parties herein is whether the language in the so-called warranty is to be construed as a condition precedent or as a statutory warranty. The determination of this issue necessitates a reference to certain sections of the uniform sales act.

By way of preface, it may be said that, owing to the number and variety of commercial transactions involving personal property, throughout the various states, and because of the conflict of judicial opinion upon similar legal questions, the Commissioners on Uniform State Laws, in 1906, drafted and proposed the uniform sales act and recommended the same for passage by the various state legislatures.

In 1926, the state of Washington followed the lead taken by more than half of the states of the Union that had adopted the act either *in toto* or with minor

changes. Our uniform sales act (Laws of 1925, Ex. Ses., p. 355, Rem. Rev. Stat., §§ 5836-1 to 5836-79 [P. C. §§ 6227-1 to 6227-79], inclusive), is entitled:

"An Act relating to sales of personal property, making the law thereof uniform with that of other states, and repealing Section 5826 of Remington's Compiled Statutes of Washington."

In § 74 of the act, Rem. Rev. Stat., § 5836-74 [P. C. § 6227-74], it is provided that the act shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it.

Under the head of "Conditions and Warranties," the act contains a number of sections which must be noted. In so far as they are pertinent here, they read as follows:

"Sec. 11. *Effect of Conditions.* (1) Where the obligation of either party to a contract to sell or a sale is subject to any condition which is not performed, such party may refuse to proceed with the contract or sale or he may waive performance of the condition. If the other party has promised that the condition should happen or be performed, such first mentioned party may also treat the nonperformance of the condition as a breach of warranty.

"(2) Where the property in the goods has not passed, the buyer may treat the fulfillment by the seller of his obligation to furnish goods as described and as warranted expressly or by implication in the contract to sell as a condition of the obligation of the buyer to perform his promise to accept and pay for the goods." (Rem. Rev. Stat., § 5836-11 [P. C. § 6227-11].)

"Sec. 12. *Definitions of Express Warranty.* Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. . . ." (Rem. Rev. Stat., § 5836-12 [P. C. § 6227-12].)

"Sec. 14. *Implied Warranty in Sale by Description.* Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, . . . ." (Rem. Rev. Stat., § 5836-14 [P. C. § 6227-14].)

Respondent bases its contention partly upon § 11 above, Rem. Rev. Stat., § 5836-11 [P. C. § 6227-11], and partly upon the general law of contracts. Appellant bases its contentions to some extent upon § 11, but more particularly upon §§ 12 and 14, Rem. Rev. Stat., §§ 5836-12, 5836-14 [P. C. §§ 6227-12, 6227-14].

Referring first to § 11, it becomes necessary to consider the term "condition" from two standpoints: (1) its nature, and (2) its effect. We consider first its nature.

Prior to the adoption of the uniform sales act in this country, the term "condition" was used in a twofold sense: (1) in the sense of a suspensory condition, and (2) in the sense of a promissory condition. The suspensory condition had reference to some contingency fixed by the parties themselves, the existence or happening of which was necessary to the vitality of the contract and the failure of which ended the contract. Examples of such conditions arose in sales of goods described as being located at a certain place or to arrive at a certain place in a certain time, or in sales of goods subject to a specified test or condition. If there were no goods at the place designated, or if they did not arrive as stipulated, or if the goods did not meet the test or condition, then there was no contract.

The promissory condition, on the other hand, had reference to some act or contingency fixed by the contract, which one of the parties agreed to perform, and the failure to perform which constituted a breach of his promise. Instances of such conditions were *prom-*

*ises* that the goods were of a certain kind or character, or that a particular thing was to be done, or that a certain state of facts would exist. The suspensory condition was a true or pure condition, the existence or happening of which was precedent to any liability on the part of the other party. The promissory condition was simply a promise or warranty which one of the parties undertook to perform or satisfy, and failure to do so constituted a breach of his promise.

The suspensory condition was recognized at common law as a pure *condition* and is still so recognized under the uniform sales act. The promissory condition, however, is not so recognized under that act. Under the sales act, it is regarded merely as a warranty or promise. The distinction in result is that, under the uniform sales act, just as at common law, the failure of a suspensory, or pure, condition creates no right of action, but simply permits the parties to treat the contract as at an end. On the other hand, the promissory condition, considered by the act as a warranty or express promise, gives rise to an action for its breach. For a full discussion of this subject, see Mariash on Sales, pp. 225-270, §§ 92-98. In *Hurley-Mason Co. v. Stebbins, Walker & Spinning,* 79 Wash. 366, 373, 140 Pac. 381, Ann. Cas. 1916A, 948, L. R. A. 1915B, 1131, which was decided before the adoption of the uniform sales act in this state, the distinction between the two kinds of condition is clearly drawn, although the terms ''suspensory'' and ''promissory'' are not used.

█ With this distinction in mind, we note the effect of conditions as prescribed in § 11 of the uniform sales act, Rem. Rev. Stat., § 5836-11 [P. C. § 6227-11]. We find that the results formerly obtaining are emphasized and somewhat extended by §11 of the statute. Under subdivision (1) of that section,

when the obligation of one party is subject to a condition that is not performed, the other party has several recourses: (1) He may refuse to proceed with the contract or sale; or (2) he may waive the performance of the condition; and (3) he may also treat the nonperformance of the condition as a breach of warranty. Subdivision (2) of § 11 appears to be a re-iteration, more specifically and restrictively stated, of the first recourse, above mentioned in subd. (1). Where the property in the goods has not passed, the buyer may treat the seller's obligation to furnish goods as warranted, as a condition of the buyer's promise to accept and pay for the goods. Here, again, however, the relief or remedy is limited. The buyer need not accept and pay for the goods, but no action for damages is prescribed in that subdivision. If the buyer desires to bring an action for damages, he must do so under the third recourse in subdivision (1), treating the nonperformance as a breach of warranty.

Our consideration of the matter thus far leads us to the conclusion that respondent cannot maintain an action, or set up a counterclaim, for damages under § 11 of the uniform sales act, on the theory of breach of condition precedent. An action for damages under that section must be for breach of warranty.

We next consider respondent's contention that it may maintain its defense and assert the right claimed, under the general law relating to contracts.

We may, at the outset, eliminate any question of fraud in the inception of the particular contract. There is no contention of fraud, and the facts point to the contrary. Section 73 of the act, Rem. Rev. Stat., § 5836-73 [P. C. § 6227-73], specifically retains the general rules of procedure in cases of fraud, but that section does not apply here.

We also eliminate from consideration those cases

where the seller fails or refuses to proceed with the contract at all, or does nothing in assumed compliance with the contract.

We must further bear in mind that, in this instance, the question does not relate to the right of the respondent to reject the gear and refuse to pay for it, on the ground that it was not as represented or was different from the thing which the appellant had, agreed to deliver. The sole question before us concerns respondent's right to maintain a counterclaim for damages.

The situation may be viewed from the standpoint of the law in this state prior to the adoption of the uniform sales act, and then considered in the light of the effect of that act. Respondent cites two cases on which it specifically relies: *Springfield Shingle Co. v. Edgecomb Mill Co.*, 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258, and *Sussman v. Mitsui & Co.*, 114 Wash. 294, 195 Pac. 3.

In the *Springfield Shingle Co.* case, the plaintiff had purchased from the defendant a quantity of shingles known to the trade as "Star A Star," a well-known brand of superior grade having not only a certain quality but also fixed dimensions. The shingles, when delivered, turned out to be of an inferior grade, whereupon the plaintiff brought suit for damages. Judgment for plaintiff was upheld by this court on the theory that the sale of an article as being of a particular description implied a contract that the article sold was of that description. The court pointed out that this rule was founded not upon any theory of warranty, but, rather, upon the theory of condition broken. The opinion discusses many cases and refers to the confusion that had previously arisen, both in England and in this country, from the use of the word "warranty." However, the cases on which the opinion

relies for supporting authority treated a sale by description as importing a warranty, guaranty, or undertaking that the goods were of a particular character or variety, for the breach of which an action in damages would lie. Moreover, in its concluding paragraph, the opinion in the *Springfield Shingle Co.* case speaks of the words ''Star A Star'' as being in the nature of a condition precedent or *warranty*.

With respect to that case, four things may be noted: (1) The case arose prior to the adoption of the uniform sales act; (2) although the opinion proceeds upon the theory of ''condition precedent,'' it derives its support from cases bottomed upon the theory of warranty of description; (3) the opinion finally speaks of a condition precedent and warranty of description as though they were one and the same thing; and (4) there was no limitation in the particular contract as to the remedy available to the buyer.

In the *Sussman* case, suit was brought for damages for breach of contract to furnish pig iron of a specified quality, which, upon inspection, turned out to be of inferior grade. Recovery was permitted on the theory that the suit was not for breach of warranty, predicated upon an executed contract, but upon the theory of nonperformance of an executory contract. Again, it will be noted (1) that the action arose prior to the adoption of the uniform sales act; and (2) that the contract contained no provision concerning the buyer's remedy.

Assuming, however, that those two cases had a tendency to shape the law, prior to the uniform sales act, in the direction of permitting recovery of damages for failure to deliver goods of the kind or character agreed upon, on the theory that there was a nonperformance of the contract, still later cases, approaching more nearly the time of the adoption of the uniform

sales act, laid down the rule that such right of action was for breach of warranty.

In *Jolly v. Blackwell & Co.*, 122 Wash. 620, 211 Pac. 748, plaintiffs had purchased a quantity of seed rye which the defendant, a dealer, represented to be spring rye. The seed turned out to be fall rye. The dealer had obtained the grain from a seed company but had delivered the rye to the purchaser in the original sacks, unopened. The seed company had placed tags upon and in the sacks disclaiming all warranty of description or quality. The purchasers brought suit against the dealer for damages for loss of their crops. The trial court held that, inasmuch as the purchasers had received and read the tags disclaiming all warranties, there was no implied warranty, and that, therefore, the purchasers could not recover. Reversing the trial court, this court held that there *was* an implied warranty on the part of the dealer, and pointed out that the disclaimer had not been made by the dealer, but by the seed company, which was a stranger to the contract. But the opinion also states that, had the dealer itself made the disclaimer, then the purchaser would have been held to have taken the grain without any warranty.

*Larson v. Inland Seed Co.*, 143 Wash. 557, 255 Pac. 919, 62 A. L. R. 444, is, in a way, the converse of the *Jolly* case, but the rule declared is the same. There, the purchaser had ordered from a seed company a quantity of spring rye. The seed company advised the purchaser that it did not have any spring rye but that it would order it for him from a feed mill. The grain was sent direct to the purchaser by the feed mill, which had placed upon each of the sacks a tag disclaiming any warranty as to description, quality, or productiveness. The grain turned out to be fall rye, and the purchaser brought an action for damages

against both the seed company and the feed mill for the loss resulting from the failure of his crop. The seed company was absolved from liability on the ground that its agreement was simply to place an order with the feed mill for spring rye to be sent to the purchaser, which it did. The feed mill was held to be relieved of liability for breach of warranty because of its disclaimer.

*Wilson v. Miller Flour Mills,* 144 Wash. 60, 256 Pac. 777, presented a case much like the preceding one, except that, under the particular facts of the *Wilson* case, it was held that the seller, from whom the seed had been ordered by the dealer for the purchaser, had dealt directly with the purchaser in the particular transaction. In addition, there was no disclaimer of warranty. The seller was held liable as for breach of warranty.

*Hartman v. Barnes Grain & Feed Co.,* 155 Wash. 394, 284 Pac. 754, arose after the adoption of the uniform sales act, but no mention of the act is made therein. All the cases on which the opinion relies likewise arose prior to the act. To some of those cases we have already referred.

In the *Hartman* case, the plaintiffs had purchased from the defendant certain seed represented to be alfalfa seed, but which turned out to be seed that produced a worthless crop known as "yellow trefoil." In answer to a suit for damages brought by the purchasers, the seller alleged that it had specifically refused to warrant the name, description, variety, or purity of the seed, as shown by tags on the sacks. This was denied in the reply. The evidence was in conflict. It was held that the plaintiffs' evidence was sufficient to warrant the jury in concluding that there was an express warranty by the seller as to the character and quality of the seed. Recovery was therefore allowed.

These cases all show that the trend of our decisions immediately preceding the adoption of the uniform sales act was to treat descriptions and representations as to the kind or quality of goods sold, as warranties, either express or implied. This doctrine was in line with the prevailing doctrine throughout the United States.

1 Williston on Sales 393, § 205, makes this statement:

"The law, however, is now convincingly settled that descriptive statements do constitute a warranty, whether the seller makes them or whether the buyer in ordering goods makes them and the seller furnishes goods in response to such order; and in what are technically called contracts to sell or sales by description the Sales Act in terms so provides."

Appended to this statement is a citation of numerous authorities.

The great difficulty with the subject of sales prior to the sales act was that, because of the variety of transactions, the various and differing expressions used by parties upon particular occasions, and the differences of meaning intended by various courts in their use of technical words, utter confusion resulted. It was so recognized and stated in many of the decisions, including our own. Consequently, the uniform sales act was prepared, promulgated, and adopted in most of the states for the purpose, as therein stated, of making uniform the laws of those states which enacted it. As stated in *Lumbrazo v. Woodruff*, 256 N. Y. 92, 96, 175 N. E. 525, 75 A. L. R. 1017:

"All these distinctions causing more or less confusion and uncertainty in the law have been swept away by the Uniform Sales Act, and we now have in section 95 of the Personal Property Law [which is the same as Rem. Rev. Stat., § 5836-14, *supra*] the provision that where there is a contract to sell, or a sale of

goods by description, there is an implied warranty that the goods shall correspond with the description. This warranty, like the other warranties at common law, survives acceptance. The remedies are alike for all breaches of warranty, even those including what was formerly known in our State and at common law as the description of property, constituting a precedent condition authorizing rejection.''

■ Referring now to §§ 12 and 14 of the uniform sales act, Rem. Rev. Stat., §§ 5836-12, 5836-14 [P. C. §§ 6227-12, 6227-14], upon which appellant relies, we note that, under § 12, any affirmation of fact or any promise by the seller relating to the goods constitutes an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. Under § 14 of the act, Rem. Rev. Stat., § 5836-14 [P. C. § 6227-14], if there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description. In other words, under either circumstance, there is a warranty; and by subsequent provisions of the act, the breach of such warranty gives rise to a choice of certain specified remedies, unless the parties themselves by their contract agree upon the extent of the seller's liability and the relief available to the buyer.

A consideration of these sections leads us to the conclusion that the failure of the appellant to ship to the respondent, in the first instance, a semisteel gear constituted a breach of warranty.

■ Having determined the nature and the effect of the warranty in question, and conceding that there was a breach of such warranty by the appellant, the next question is the matter of remedy or relief.

Section 69 of the uniform sales act, Rem. Rev. Stat., § 5836-69 [P. C. § 6227-69], prescribes the remedies

for breach of warranty. So far as need be noticed here, it provides:

"(1) Where there is a breach of warranty by the seller the buyer may at his election: (a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; (c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty; (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."

We will assume, in this case, that the respondent might have accepted or might have refused to accept the gear and, accordingly, have availed itself of the appropriate remedy unless it was precluded by some other provision of the uniform sales act. We also note, in this case, that respondent demanded and received a new gear, and made no claim for damages until after this suit was brought.

Section 71 of the act, Rem. Rev. Stat., § 5836-71 [P. C. § 6227-71], provides:

"*Variation of Implied Obligations.* Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

It will thus be seen that, while the uniform sales act provides the remedy or relief for breach of warranty,

it also specifically provides that the parties may contract with reference thereto.

In this case, the contract as finally made by the parties expressly provided that appellant's obligation under the warranty was limited to replacing any part demonstrated to have been defective, that such warranty was in lieu of all other warranties, express or implied, and that no other liability in connection with the goods was assumed by the appellant.

The uniform sales act expressly recognizes the right of parties to contract either in compliance with, or else contrary to, the provisions of the act and, in the absence of fraud or other invalidating cause, gives effect to such contract. The parties, having made the contract, are bound by it. The appellant, having complied with the obligation assumed by it, is not subject to a liability which it has expressly disclaimed.

The judgment is reversed, with direction to the trial court to enter judgment for appellant in the sum of $1,632.34.

MILLARD, C. J., GERAGHTY, MITCHELL, and TOLMAN, JJ., concur.