[No. 37235.  Department Two.  June 10, 1965.]

O. I. HALL *et al.*, *Appellants*, v. PUGET SOUND BRIDGE AND DRY DOCK COMPANY, *Respondent*.*

*Culp, Dwyer, Guterson & Edwards*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *W. E. Evenson*, for respondent.

*Reported in 403 P.2d 41.

HAMILTON, J.—Plaintiffs, a father and son partnership, are contractors engaged in heavy construction work, and defendant, a corporation, is the owner and operator of a rock quarry in the Seattle area commonly known as the Riverton Quarry.

In June, 1960, plaintiffs were the successful bidders on a United States Navy contract for the construction of jet aircraft power check facilities at Ault Field, Whidbey Island, Oak Harbor, Washington. The facilities to be installed included several large slabs of heat resistant concrete. Contract specifications required that the heat resistant concrete should attain a minimum flexural strength of 650 pounds per square inch after 28 days of curing, and that only trap rock or expanded shale could be used as aggregate in such concrete. The specifications further provided that any trap rock used was to be of a "diabase or basalt variety, fine of grain, free of voids, quartz, and zeolites, with identity of structure piece to piece, or rock having these characteristics."

In July, 1960, and during the course of plaintiffs' search for a supply of the specified aggregate, defendant delivered to O. I. Hall a sampling of crushed rock from its quarry. This was turned over by Mr. Hall for testing to Herman Adalist, a concrete technician doing business as North American Inspection and Testing, who had been engaged by plaintiffs to locate a source of suitable aggregate and to design a concrete mix which would meet the navy specifications. Mr. Adalist found the aggregate unsuitable. He thereafter visited defendant's quarry and consulted with Lawrence Wick, the quarry manager, advising him of the navy contract, the specifications, and the need for good, basaltic aggregate that was uniform from piece to piece, dense, hard, fine-grained, and black or grey in color. During the course of the discussion, three comparatively small stockpiles of sized aggregate, ranging in the various gradations desired and appearing to meet the qualifications, were observed. Mr. Wick informed Mr. Adalist these stockpiles were from the best material in the quarry and that

the quarry could provide more of the same. Cartons were provided, and Mr. Adalist thereupon took samplings from each stockpile. Testing of the aggregate samples ensued, during the course of which Mr. Adalist returned to the quarry on two occasions and obtained additional quantities of aggregate from the three stockpiles. Testing demonstrated that the aggregate from these stockpiles was suitable, and that a concrete mix utilizing such aggregate as a component would achieve a greater flexural strength than the minimum required by the contract.

At the end of August, 1960, Mr. Adalist advised plaintiffs of his findings and of the concrete mix he had designed. Plaintiffs in turn notified the pertinent navy office. During September, a navy representative visited the quarry, contacted Mr. Wick, and observed and took samples of the stockpiles. On September 29, 1960, the navy formally approved the aggregate and the concrete mix designed by Mr. Adalist. In the meantime, plaintiffs, through John Hall, orally negotiated with Mr. Wick relative to price, quantity, and delivery of the type of aggregate selected by Mr. Adalist. Terms were reached and deliveries commenced. These negotiations were confirmed by a written purchase order from plaintiffs dated September 30, 1960, specifying "Crushed Trap Rock as selected by North American Inspection & Testing."

Pouring of concrete, utilizing the aggregate in question, was commenced by plaintiffs under the navy contract in October and completed in December, 1960. At the conclusion of the work, plaintiffs were notified by the navy that the heat resistant concrete poured on the job failed to achieve the required 650 pound minimum flexural strength. Plaintiffs were thereafter required to remove and replace all heat resistant concrete, which they did at substantial expense.

Plaintiffs attributed failure of the concrete to meet the flexural strength requirement to the presence of soft, brown, porous rock in the coarse aggregate supplied by defendant. They contended that such rock was not present, in sig-

nificant quantities, in the stockpiles Mr. Adalist had observed and they had ordered from, nor was it contemplated in their negotiations for a good, hard, fine-grained basaltic aggregate, black or grey in color. They orally and in writing notified defendant of their contention. In the replacement work, which met the strength requirements, additional aggregate from defendant's quarry was used.

Plaintiffs, in due time, commenced this action seeking damages, principally upon the grounds that defendant had breached an implied warranty that the aggregate sold to plaintiffs would correspond in kind and quality with the samples obtained by Mr. Adalist and/or with the description given of the aggregate required. Defendant counterclaimed for the price of the additional aggregate supplied in connection with the replacement work.

The action came on for trial before the court sitting with a jury. At the conclusion of plaintiffs' evidence, the trial court granted defendant's challenge to the sufficiency of plaintiffs' evidence, dismissed plaintiffs' claim for relief, and entered judgment for defendant upon its counterclaim. Plaintiffs have appealed.

On appeal, it is conceded that the aggregate transaction between plaintiffs and defendant constituted a sale or a contract to sell within the contemplation of the Uniform Sales Act as codified in RCW 63.04. It, likewise, is not seriously disputed that, in the present posture of the case, plaintiffs have produced sufficient evidence of damage, causation, and notice to carry them past a nonsuit. Neither is it contended that there are involved any warranties beyond a warranty that the aggregate would correspond in kind and quality with the alleged sample or description. Accordingly, we do not reach or undertake to resolve any questions that might inhere in such issues.

Essentially, then, the only issue presented by the respective parties on appeal is whether plaintiffs' evidence demonstrates, on a prima facie basis, that the 1960 aggregate transaction between plaintiffs and defendant constituted either a sale by sample or a sale by description, or both,

and carried with it a warranty that the material supplied would correspond in quality with the sample or description.

■ In approaching the issues presented, it is necessary to bear in mind the frequently repeated rule that a challenge to the sufficiency of the evidence, in a jury trial, in essence disregards the unfavorable evidence and admits the truth of the opponent's favorable evidence and all inferences which can be reasonably drawn therefrom, and requires that such evidence be interpreted most strongly against the moving party and in a light most favorable to the opponent. No element of discretion is involved. Such a challenge can be granted only when the court can say, as a matter of law, that there is no substantial evidence to support the opponent's claim. *Boley v. Larson*, 62 Wn.2d 959, 385 P.2d 326 (1963); *Fannin v. Roe*, 62 Wn.2d 239, 382 P.2d 264 (1963); *Miller v. Payless Drug Stores of Washington*, 61 Wn.2d 651, 379 P.2d 932 (1963); *Lindberg v. Steele*, 5 Wn.2d 54, 104 P.2d 940 (1940).

In our introductory statement of the factual background giving rise to plaintiffs' claim for relief, we have sought to adhere to the foregoing rule.

Plaintiffs rely upon the warranties, which are designated as implied warranties but in practical operation are tantamount to express warranties, found in RCW 63.04.170 and 63.04.150, respectively, reading as follows:

> In the case of a contract to sell or a sale by sample:
> (a) There is an implied warranty that the bulk shall correspond with the sample in quality. RCW 63.04.170.

> Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, and if the contract or sale be by sample, as well as by description, it is not sufficient that the bulk of the goods correspond with the sample if the goods do not also correspond with the description. RCW 63.04.150.

Sales by sample and sales by description are, in many respects, nearly identical in their function. In the market place they are both ways of identifying the nature and quality of the goods involved in the sales transaction. Thus,

many of the same legal principles are applicable to either type of sale. 1 Williston, Sales §§ 223, 249, pp. 571, 662 (rev. ed. 1948).

■ Generally speaking, to constitute a sale by sample, to which will attach an implied warranty of quality, it must appear that the parties to the transaction, or their agents, contracted solely with reference to a representative exemplar of the commodity in question, the bulk of which commodity was not readily available for inspection, with the mutual understanding that they were contracting with reference to a sample and that the bulk of the commodity would correspond with the sample. *Mono Serv. Co. v. Kurtz*, 170 Wash. 539, 17 P.2d 29 (1932); 46 Am. Jur. *Sales* § 369, p. 551; 12 A.L.R.2d 524.

' ■ A sale by description, to which will attach an implied warranty of quality, on the other hand, is one in which the identity and quality of the goods, which are the subject matter of the transaction, depends solely upon the description set forth by the parties, or their agents, in their dealings. 77 C.J.S. *Sales* § 319, p. 1171. A sale may be by description, whether the descriptive statements are made by the seller in inducing the sale or the buyer in ordering the goods. *Crandall Eng'r Co. v. Winslow Marine Ry. & Shipbuilding Co.*, 188 Wash. 1, 61 P.2d 136 (1936), 1 Williston, Sales § 205, p. 528 (rev. ed. 1948).

■ Where the facts in a given case are in dispute, or where different conclusions may be drawn from the facts presented, the question of whether a given transaction constitutes a sale by sample or a sale by description, or both, presents a question of fact for the jury. *Schmieg v. Wold*, 1 Wash. Terr. 472 (1875); *Hoyt v. Hainsworth Motor Co.*, 112 Wash. 440, 192 Pac. 918 (1920); *Hartman v. Barnes Grain & Feed Co.*, 155 Wash. 394, 284 Pac. 754 (1930); 12 A.L.R.2d 571; 77 C.J.S. *Sales* § 369b, p. 1306.

Against the backdrop of the foregoing principles, we are satisfied that plaintiffs have demonstrated a prima facie case of a sale by sample and/or a sale by description. Viewing plaintiffs' evidence in the most favorable light, and

without the benefit of defendant's evidence, the jury could well have concluded therefrom that (a) defendant was advised of and was desirous of selling aggregate to plaintiff for the navy job in question; (b) plaintiffs advised defendant of the special type of aggregate required, describing it as a good, hard, fine-grained basaltic aggregate, black or grey in color; (c) defendant, through its agent, consented to and assisted in providing plaintiffs, through their agent, with samples from the three aggregate stockpiles displayed in its quarry; (d) defendant assured plaintiffs, through their respective agents, that it could duplicate and supply the type and quality of aggregate represented by the three stockpiles; (e) the aggregate in the three stockpiles met the description and the requirements of plaintiffs; (f) plaintiffs relied upon defendant's assertions that it could duplicate and furnish, in the quantities required, aggregate of the type and quality represented by the stockpiles; and (g) both plaintiffs and defendant contracted with the understanding and intent that the aggregate supplied would conform in quality to the stockpiles and/or to the description.

Given the foregoing facts, one or both warranties contemplated by RCW 63.04.150 and RCW 63.04.170 would arise.

The judgment of the trial court is reversed and the cause is remanded for new trial. Costs of appeal will abide the results of trial.

DONWORTH, WEAVER, and OTT, JJ., and JOHNSON J. Pro Tem., concur.

---

August 12, 1965. Petition for rehearing denied.