RALPH M. WARD, Doing Business as Ralph M. Ward & Company, Appellant, v. GEORGE E. VALKER, Doing Business as Valker's Minot Greenhouse, Respondent.

(176 N. W. 129.)

**Sales — implied warranty as to fitness for purpose by seller.**

In an action to recover a balance owing by the defendant, a florist, to the plaintiff, an importer of bulbs, where it appears that the plaintiff, in filling an order of the defendant, furnished an inferior quality of lily bulbs for which it later substituted a different species of cold-storage bulbs, and where the defendant filed a counterclaim based on the inferior quality of the bulbs, claiming consequential damages for the failure of the flower crop, the trial resulting in a judgment for the defendant for $843.26, it is *held:*

1. Under § 15 of the Uniform Sales Act (Sess. Laws 1917, chap. 202), where the buyer relies upon the seller's skill or judgment (though he be not the manufacturer or grower), the seller knowing the purpose for which the goods are intended to be used, there is an implied warranty that the goods shall be of merchantable quality and fit for the intended use.

NOTE.—The general rule of law, that where an article is ordered for a specific purpose, and that purpose is communicated to the seller, and the buyer relies upon the seller's skill, judgment, and experience to furnish something that will answer that purpose, there is an implied warranty that the article will be reasonably fit for the intended purpose, finds support in the authorities collated in notes in 22 L.R.A. 189; 15 L.R.A.(N.S.) 855, 868, 884; 31 L.R.A.(N.S.) 783; and 34 L.R.A.(N.S.) 737, on applied warranty of fitness of goods bought for a special purpose.

**Sales — substitution by seller.**

2. The fact that the seller substituted certain other lily bulbs for the ones ordered, and shipped them from a different source of supply, indicates an exercise of judgment sufficient to justify the buyer placing reliance upon its "skill and judgment.'

**Sales — implied warranty — effect of printed statement against warranty in invoice.**

3. Where circumstances anterior to the invoices indicate the existence of an implied warranty, a printed statement on the invoice in negation of a warranty does not operate to extinguish it as a matter of law.

**Sales — where there is a substitution, clause against warranty does not apply.**

4. The record showing that the damages recovered on the counterclaim were based upon a breach of an implied warranty in the sale of goods substituted for those originally ordered by the defendant, and that the substituted goods were not supplied as a part of the original order, the clause in the original order which expressly provides that no warranty is given is not applicable to the sale of the substituted goods.

Opinion filed January 10, 1920.

Appeal from the District Court of Ward County, *Leighton,* J. Affirmed.

*Arthur M. Thompson* for appellant.

"One who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for that purpose." Comp. Laws 1913, § 5980; McQuade v. Ross, 22 L.R.A. 187.

"In sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity or thing sold, and the seller is guilty of no fraud, and is neither the manufacturer nor the grower of the thing he sells, the maxim caveat emptor applies." Benjamin, Sales, § 644; Barnard v. Kellogg, 10 Wall. 388; Egan v. Cole, 34 Pa. 236; American Forcite Powder Mfg. Co. v. Brady, 159 N. Y. 692, 53 N. E. 1122; Gardner v. Winter, 117 Ky. 382, 63 L.R.A. 647, 78 S. W. 143; 35 Cyc. 397–399; 36 Cyc. 406, 407; 10 C. J. 350.

Messrs. *Palda & Aaker,* for respondent.

"A disclaimer of warranty printed in fine type in the corner of a bill rendered to the purchaser of the seed, prior to his planting the

same, does not affect an implied warranty raised by the sale, where no-
tice does not in fact come to his attention." Landreth v. Wyckoff, 73
N. Y. Supp. 388; Coates v. Harvey, 2 N. Y. Supp. 5; Grafter-Stamps
Drug Co. v. Williams, 105 Miss. 296, 62 So. 273; Edgar v. Breck &
Sons, 172 Mass. 581, 52 N. E. 1083; Hooven-Allison Co. v. Wirtz
Bros. 15 N. D. 477, 107 N. W. 1078.

The vendor of personal property impliedly warrants the quality and
quantity of the articles sold. Holbert v. Weber, 36 N. D. 106, 161 N.
W. 560.

BIRDZELL, J. This is an appeal from a judgment of the district court
of Ward county and from an order denying a motion for a judgment
rendered in favor of the defendant on a counterclaim. The facts may
be briefly stated as follows: The plaintiff was engaged in the business
of importing bulbs and selling them wholesale to florists. The defend-
ant operates a greenhouse at Minot, North Dakota. In the fall and
winter of 1916, and again in the fall of 1917, the defendant ordered
certain bulbs from the plaintiff. With certain exceptions these orders
were filled, but the plaintiff failed to furnish an item of lily bulbs as
ordered, and some cold-storage bulbs were shipped as a substitute. The
action is brought to recover a balance of $861.55 which the defendant
had not paid. The defendant filed a counterclaim based on the inferior
quality of the goods substituted, claiming consequential damages for
the failure of the flower crop. The trial resulted in a judgment for the
defendant for $843.26.

The principal argument of the appellant is that the damages
claimed in the counterclaim are not recoverable, for the reason that
the goods were sold without a warranty. It appears that the orders
which the plaintiff signed contained the following: "The above order
is given subject to the following conditions, to all of which the pur-
chaser hereby fully agrees. All understandings, representations, con-
ditions, and agreements between the buyer and the salesman must be
stated in this order. All bulbs and plants are carefully selected and
packed, but, on account of the goods having been imported and of many
other circumstances entirely beyond our control, no guaranty of the
character of the goods, sizes, or flowering results is given under any

circumstances. All goods are sold subject to crop conditions and tariff revision. Unless otherwise stated in the order. Prices are considered f.o.b. New York city. The purchaser assumes the risk of transportation. Ralph M. Ward & Company shall not be held liable for any failures or delay in deliveries or interruption in the performance of this contract by reason of war or by any strike, fire, railroad, or other carrier's delays, or for any similar interference. Terms: Unless otherwise stated all bills for bulbs, plants, and roots are due sixty days from date of invoice; 2 per cent cash discount allowed if paid within ten days from date of invoice; all bills subject to sight draft if not paid when due; interest added to overdue accounts. Salesmen are not authorized to collect bills nor incur debts in our name under any pretext. Ralph M. Ward & Company reserve the right to decline the order, if taken at unsatisfactory prices or upon terms to which Ralph M. Ward & Company cannot agree. Countermands will not be accepted. It is understood that neither party is bound by any verbal contract."

In purported fulfilment of an order which the defendant had signed upon a blank containing the foregoing paragraph, some bulbs were sent, concerning which the defendant made complaint by letter, dated October 29, 1917, as follows:

"In regard to your invoice number 7285 calling for three cases of Formosa lily bulbs, 7 by 9, will say that this stock is very, very small and poor. We doubt if the bulbs average 4 inches, and there are only 61 bulbs out of the 3 cases that average 7 by 9. These are the poorest lot of lily bulbs we have ever received."

In replying to this letter the plaintiff, on November 3, wrote the defendant:

"What you say about Formosa is a great surprise to us, and it is evident there was a mistake made in shipping your cases, or the cases were improperly marked in Yokahama. We have received quite a few letters this year from customers who tell us that the Formosa is very satisfactory indeed.

"If you doubt you can get a good crop out of the Formosa you have we can send you some 7/9 packed 100 per case which we have in Chicago. Please advise us if you want them shipped to you. The charge

for the Formosa which have already been sent you can be left open until flowering time."

Defendant replied that he did not think he would get a third of a crop, and asked to have a duplicate order as suggested in plaintiff's letter. Plaintiff, in turn, wrote under date of November 10th:

"As it is evident that you wanted an early crop and we have not the full quantity of Formosa on hand to send you, we think the best thing to do will be to ship you some cold-storage Giganteum. Formosa planted now will not come in before Easter, whereas cold-storage Giganteum would flower during February and March, which is the time we presume you intended your crop of Formosa. We will ship you the cold-storage Giganteum from our warehouse in Omaha. . . ."

It appears that the cold-storage Giganteum bulbs which were shipped as a substitute for the Formosa were planted as soon as they were received, and that the flower crop from them was a failure, due to the quality of the bulbs.

The question that arises on the foregoing facts is as to whether or not the plaintiff is liable for the breach of an implied warranty of the quality of the goods sold. The first contention is that the plaintiff is not liable by reason of the stipulation in the written order hereinbefore quoted in full. But it is clear from the testimony and the correspondence in evidence that the damages claimed did not result from a breach of warranty concerning any goods embraced within the written order. On the contrary, it appears that the claim is based upon the inferior quality of bulbs sent as a substitute for an order which the plaintiff admitted was not properly filled by it.

Section 15 of the Uniform Sales Act (Sales Laws, 1917, chap. 202) provides that there is an implied warranty or condition as to quality or fitness:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not). . . ." And also:

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or man-

ufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

Under the Sales Act the implied warranty arises out of the reliance of the buyer upon either the skill or judgment of the seller, and the relative position of the parties, due principally to the character of the business or occupation of the seller, which was once deemed practically conclusive in determining the existence of an implied warranty, is not conclusive under the act. As to the effect of the Sales Act in broadening somewhat the liability of the seller, see Williston, Sales, § 248. Moreover, a comparison of the repealed statute with the section of the Sales Act touching the subject of implied warranties further illustrates the broadening of the basis of liability. Section 5980, Comp. Laws 1913, the repealed statute, apparently limited the warranty of fitness for a particular purpose to transactions where the article was sold by a manufacturer. This term, however, will be seen to be broad enough to include growers. See Williston, Sales, § 240. Whereas, under the sections of the Sales Act quoted above, the implied warranty may exist though the seller be not the manufacturer.

It is also contended that a printed statement upon the various invoices sufficiently negatived the implied warranties as a matter of law. The printed statement reads: "No warranty of any kind given. All claims must be made within five days after delivery." The observation of Holmes, J., in a parallel case is a sufficient answer to this contention, and we are content to adopt it as such: "The general printed warning on the billhead, that the defendant did not warrant seeds, could have no effect unless it led to the inference that the old contract had been rescinded, and a new one substituted, by mutual agreement. Even if the bill had been receipted, it would not have excluded proof of the warranty, and whether it was evidence of a rescission or not it did not establish one as matter of law." Edgar v. Joseph Breck & Sons Corp. 172 Mass. 581, 52 N. E. 1084. If the circumstances anterior to the invoices indicated the existence of a warranty, we cannot say that the printed statement on the invoice operated to extinguish it as a matter of law.

Under the facts in the instant case there can be little or no question that the purchaser relied upon the judgment of the seller in supplying

bulbs that would take the place of the ones previously shipped, and which would be capable of producing a flower crop for the market intended to be supplied by the first order. It is apparent, too, that the seller exercised its judgment in this particular by changing from one species to another and shipping from a different source of supply, to wit, cold storage from Omaha instead of Chicago.

There is ample testimony in the record to support the recovery upon the counterclaim to the extent of the verdict and judgment. In fact, the appellant does not seem to question the sufficiency of the evidence on this point. Being of the opinion that the record contains proof of sufficient facts to support an implied warranty of the substituted bulbs, and finding no reversible error, the judgment and order appealed from must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and GRACE, and BRONSON, JJ., concur.

ROBINSON, J. I dissent.