WILLIAM J. KENNEDY, APPELLEE, V. CORNHUSKER HYBRID COMPANY, APPELLANT.

19 N. W. 2d 51

FILED JUNE 8, 1945. No. 31926.

*Baird & Baird* and *Blackledge & Sidner,* for appellant.

*Dryden & Jensen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff brought this action in the district court for Buffalo County, Nebraska, alleging substantially in his petition that on or about May 8, 1943, he purchased from defendant a bushel of hybrid seed corn, No. 5892, 20 flat, relying upon defendant's newspaper and radio advertisements, and the representations of defendant's agent that the seed would be hybrid seed corn of that grade and if planted would return a much increased yield over ordinary seed corn. He alleged that relying on such representations, he planted the seed but it did not germinate or yield a crop in conformity with the representations made, because it was in fact inbred seed, not hybrid seed of the quality purchased, as a result of which he suffered damages.

Defendant for answer admitted that plaintiff purchased from defendant one bushel of hybrid seed corn, No. 5892, 20 flat, on or about May 8, 1943; denied generally all other allegations of plaintiff's petition, and alleged in substance that the seed was purchased by plaintiff from defendant upon express terms and conditions that defendant did not give any warranty, express or implied, as to the productiveness, yield, or quality of the crop produced therefrom. Defendant alleged that at the time of the sale and delivery of the seed, there was delivered to and accepted by plaintiff a dated written instrument describing the seed, together with the price, and that plainly printed on the face thereof were the following terms and conditions: "NOTICE: We give no warranty, express or implied, as to the productiveness of the seed used to supply this order and we assume no responsibility for the yield or quality of the crop produced by use thereof." Defendant alleged also that there was attached to the bag containing the seed a tag upon which was plainly printed: "NOTICE, NON-WARRANTY—We give no warranty, express or implied, as to the productiveness of any seeds or corn we sell and we will not be in any way responsible for the crop."

Plaintiff for reply denied generally the allegations of defendant's answer and denied specifically that at the time of the sale and delivery of the seed to plaintiff there was delivered to and accepted by him a written instrument, or that there was any tag attached to the bag, as alleged in defendant's answer.

Upon trial to a jury, each of the parties moved for a directed verdict at the conclusion of all the evidence. Thereupon the trial court found that plaintiff was entitled to recover from defendant, and by its instructions submitted to the jury only the question of the amount of damages recoverable. The jury returned a verdict for plaintiff in the amount of $360, upon which judgment was entered. Motion for new trial was overruled and defendant appealed, assigning as sole error the finding of the trial court that the disclaimer of warranty was not a sufficient and complete defense. We find that the assignment should be sustained.

There is no dispute in the evidence upon the salient facts. We first call attention to the fact that there is no evidence whatever in the record that defendant's agent made any representations as alleged by plaintiff at the time of the purchase of the seed, or at any other time. Likewise, there is no competent evidence that any express representations were ever made by defendant or its agents in the newspapers or over the radio. With reference to the alleged representations made by defendant's agent, plaintiff testified: "Well, he didn't say anything. I just paid him and took it." Further plaintiff testified: " * * * I never have had much to do with hybrid corn, so I just took this neighbor's word that he had been raising this corn and it was so good, and I thought I would just try a bushel of it." Referring to defendant's alleged radio advertising, plaintiff testified: "They guaranteed it to be fine corn and everything,—and they do yet." And as to newspaper advertisements, plaintiff testified: "Well, it was all supposed to be fancy, good corn." It will be observed at once that this is a case wherein no express representations as to productiveness or yield of crop were made upon which plaintiff could predicate a cause of action.

The other material evidence is in substance that the plates on plaintiff's corn lister were worn, and for that reason he needed large kernel seed corn, or his lister would plant the crop too thick. One of his good farmer friends told him about this seed and gave him the number, 5892, 20 flat. The number 20 flat represents the size of the seed. The plaintiff went to defendant's seed store about 10:00 p. m. on Saturday night and asked the agent if he had it in stock. The agent said that he did. At plaintiff's request the agent then opened the bag and plaintiff saw that it was nice looking, large, flat kernel corn. He thereupon purchased it and gave his check for it.

Plaintiff testified that the agent showed him the bag; and that he did not pay any attention to whether the bag had a tag on it, but he supposed it did. The agent did not specifically call his attention to the tag. The agent, however, testified that the tag was sewed on the bag; and that he had to look at the tag to get the number of the seed purchased by plaintiff. After paying for the seed, the agent asked plaintiff to sign a sales slip to show the company that he had sold the seed to plaintiff. The agent did not read the instrument to him. However, plaintiff says that he signed without reading it because he did not have his glasses with him. The agent testified that he gave a copy of the instrument to plaintiff, but plaintiff cannot remember whether he did or not.

It is interesting to note that the disclaimer of warranty appeared on this instrument immediately above the signature of plaintiff, preceding which were the printed words, "Accepted By" in comparatively large type. The word "NOTICE" appeared at the head of the disclaimer in capital type. The rest of the disclaimer was printed in smaller but plainly visible and readable type. Sewed upon the bag was an attractive red, yellow and green tag, size three by six inches, upon one side of which there was printed in capital type the words, "NOTICE-NON-WARRANTY." The second disclaimer immediately followed in smaller but plainly visible and readable type.

Plaintiff took the bag of seed home and put it in his garage until planting time. Thereafter he opened the bag and planted the seed in a separate tract beside other segregated kinds of hybrid seed corn purchased elsewhere, all of which plaintiff testified produced abundantly while the seed purchased from defendant, although planted upon soil of like fertility and given the same care, did not produce a comparable yield.

Plaintiff first contends that the disclaimer of warranty has no application because his action is for breach of contract for failure to deliver the variety of seed purchased, and not for breach of warranty. This is not based upon the premise that he did not get the specific number which he asked for at the time of purchase, but that he purchased hybrid seed corn and was delivered inbred seed corn. This contention cannot be sustained because the fundamental difference between the hybrid seed corn purchased and the inbred seed corn delivered was the quality of its productiveness and not in kind or variety. Plaintiff received the kind and variety purchased by him. He purchased seed of a certain number and he was delivered seed of that number. He purchased what he thought would be highly productive seed of a certain kind and variety, which was in fact not highly productive but was of the kind and variety purchased by him.

Plaintiff's case is not comparable with those where a party purchased timothy and was delivered millet, or purchased alfalfa and was delivered sweet clover, or, as stated by plaintiff, purchased a cow and was delivered a horse. Cases cited by plaintiff in support of his contention are obviously distinguishable and have no application to the case at bar. The distinction is clearly demonstrated by a statement which appears in one of the cases relied upon by plaintiff. In *Rocky Mountain Seed Co. v. Knorr*, 92 Colo. 320, 20 Pac. 2d 304, it was said: "It will be observed that defendant's (buyer's) contention is not that the delivery was short in quantity, or was lacking in productiveness, or was an inferior kind of alfalfa, or that the crop failed, but rather

that on a purchase of alfalfa seed plaintiff made delivery of sweet clover seed. * * * And that is the distinction which the authorities recognize."

The Nebraska Uniform Sales Act, by chapter 69, article 4, R. S. 1943, clearly recognizes the almost uniform rule that one who sells personal property may effectually disclaim as to any warranty in connection with the sale. Section 69-471, R. S. 1943, provides: "Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale." It is stated in 55 C. J., sec. 707, p. 730: "The seller's refusal to warrant is not repugnant to, nor avoided by, the provisions of the Uniform Sales Act relative to implication of warranty." And, "When the seller has expressly refused to warrant the property in certain particulars, there can be no implied warranty of a character covering those particulars; * * * ."

The statement is made in 55 C. J., sec. 698, p. 710: "The seller of property may, by disclaimer of warranty, refuse to warrant the property sold, unless a disclaimer of warranty is contrary to statutory provisions; * * * ." And, "Any disclaimer of warranty so expressed that its existence and nature is understood by the parties to the sale as constituting a term of the bargain operates thus, as, for instance, where the buyer is given to understand that he must take the property, if at all, on his own judgment, and a provision of nonwarranty may be operative when used in letter heads, or containers in which the subject matter of the sale is sold, on bills for the price of the goods, in notes for the purchase price, or in catalogues."

Nevertheless, plaintiff argues that a disclaimer is of no avail to the seller where it does not appear that the same was brought to the attention of the buyer and that he purchased in view thereof. There is not entire unanimity in the decisions upon that question. A minority of the courts seem to hold that actual notice or knowledge of a disclaimer

is necessary. The majority, however, logically hold that the buyer's lack of actual notice or knowledge of a disclaimer of warranty does not avoid the disclaimer if under the circumstances the buyer ought to be aware of it, and there is no competent evidence of express representations, bad faith, fraud, or concealment, as in the case at bar.

Such a rule is comparable to the general rule which applies to other writings, such as notes or contracts. In this connection this court, in a case involving an insurance contract, recently placed its approval upon statements appearing in *Metropolitan Life Ins. Co. v. Alterovitz,* 214 Ind. 186, 14 N. E. 2d 570, which were adopted from *Sun Fire Office v. Wich,* 6 Colo. App. 103, 39 Pac. 587, to the effect that "There is no reason, in contracts of insurance, that a party should be, by law, relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs. His failure to do so will or should not relieve him, or allow him to avoid the contract." In adopting the rule this court said: "After a careful consideration of the authorities we conclude that there is no sufficient reason in contracts of insurance why a party should be relieved from the duty of exercising the ordinary care and prudence that would be exacted in relation to other contracts." *Gillan v. Equitable Life Assurance Society,* 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496.

It seems only logical and consistent that the same rules should apply with equal force respecting written disclaimer of warranty which is a part of the purchaser's contract. To hold otherwise would place a weapon of injustice in the hands of the purchaser and destroy the effect of such disclaimers generally, since the purchaser could as well avoid it by simply denying all notice or knowledge whether actually given or not and regardless of the circumstances presented.

There is ample authority supporting that view. In discussing the matter of notice or knowledge of disclaimer, it is said in 55 C. J., sec. 698, p. 712: "The buyer's actual ig-

norance of the disclaimer does not avoid its effect if it is so expressed that he ought to be aware of it." It is discussed in broader language in 16 A. L. R., note b, p. 882: "It has been held that, in order for a disclaimer of warranty clause to have the effect of precluding any warranty, it is not essential that the buyer should have actual knowledge of it, it being sufficient in this regard if the clause was printed upon the package containing the articles, or upon the invoice, or in the catalogue, so that it might have come to his attention."

In *Ross v. Northrup, King & Co.*, 156 Wis. 327, 144 N. W. 1124, a case similar in many respects to the one at bar, the court said: "The defendant having the right to sell without warranty, it seems clear that it did all that could in reason be required of it to advise the purchaser of the condition upon which the seed was sold. Of course it is easy to imagine other things which it might have done which would be better calculated to give notice, but if those things had been done and had proved inefficacious, still other things might be suggested which would surely acquaint Morton with the conditions of sale. The business was transacted by mail. Where the book from which the order was given, the shipping tag, and the invoice, all stated these conditions, it would seem to be unreasonable to hold that any blame attached to the defendant if Morton failed to observe all of these things. * * *

"Mr. Morton could not close his eyes to the information that was literally staring him in the face and then hold the defendant liable because he did so. In matters of contract one must observe what he has reasonable means of knowing. The law for the protection of persons even against fraud will not be extended to those who 'having the means in their own hands neglect to protect themselves. * * * The law requires men, in their dealings with each other, to exercise proper vigilance, and apply their attention to those particulars which may be supposed to be within reach of their observation and judgment and not close their eyes to the means of information which are accessible to them.'

*Mamlock v. Fairbanks,* 46 Wis. 415, 417, 418, 1 N. W. 167; *Bostwick v. Mut. L. Ins. Co.,* 116 Wis. 392, 400, 89 N. W. 538, 92 N. W. 246.

"And where a purchaser is put upon inquiry as to the quality of the thing offered for sale, he is bound to know what is discoverable in regard thereto by the exercise of ordinary care, and he cannot 'close his eyes to defects which are before him or to information which is at hand.' *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179.

"In the absence of fraud 'a man cannot relieve himself from the obligation of a written agreement by saying he did not read it when he signed it, or did not know what it contained.' *Deering v. Hoeft,* 111 Wis. 339 (87 N. W. 298), and cases cited on page 343; *Steffen v. Supreme Assembly,* 130 Wis. 485, 487, 110 N. W. 401."

We believe that the authorities cited herein reflect the more logical and just rules of law. They are clearly applicable to the situation presented here. We find, therefore, under the circumstances that defendant's disclaimers of warranty were valid and binding upon the plaintiff. We find also, since plaintiff's complaint goes entirely to the matter of lack of productiveness, and his damages consisted in failure to get the yield of crop expected, or as many bushels of corn as the purchase should ordinarily have produced, it comes within the scope of defendant's disclaimers.

In this connection there is an interesting case similar in many respects to the one at bar. The case is squarely in point upon the question of the scope of a disclaimer of warranty as to productiveness and responsibility for the yield or quality of the crop produced therefrom. In *Lumbrazo v. Woodruff,* 256 N. Y. 92, 175 N. E. 525, 75 A. L. R. 1017, it was said in the opinion: "In raising Japanese onion sets the result is not always certain, and the examination of the bulbs will not disclose their inherent vitality. The business is more or less an undertaking to bargain with nature; the elements are not always the same. Therefore, the defendants were unwilling to assume the risk of the implied warranty connected with the sale of Japanese onion sets, * * *

and insisted that if the plaintiff purchased three hundred bushels of these sets, he must take the risk of the crop, provided, of course, that the defendants had resorted to no fraud, unfair dealing or negligence amounting to undue enrichment. This clause was, therefore,. made a part of the contract: 'We give no warranty, express or implied, as to description, quality, productiveness, or any other matter, of any seeds sent out, and will be in no way responsible for the crop.' The words cover the facts of this case. The defendants did not warrant that the seeds or sets were Japanese onion sets; *neither did they warrant their productiveness*. (Italics ours.) As stated above, the principal quality of Japanese onion sets is their ability to multiply, or their productiveness. There was to be no guarantee of these qualities. The plaintiff's only damage consisted in the failure to get the crop he expected or as many bushels of onions as the purchase should have produced.

"Neither party was obliged to enter into this contract, and there is no public policy which prevents adult persons of sound mind making such agreements as they please, not prohibited by statute, or contrary to natural justice and good morals. This court and other courts have recognized the validity of agreements limiting or excluding implied warranties." Thereafter followed reversal of recovery by the buyer plaintiff and dismissal of his complaint.

For the reasons heretofore stated, we conclude that the trial court should have sustained defendant's motion for directed verdict at the conclusion of all the evidence and entered a judgment for defendant. Therefore, the judgment of the trial court is reversed and the case is dismissed.

REVERSED AND DISMISSED.