[No. 36670.     Department Two.     June 25, 1964.]

FRANK S. NAKANISHI, *Appellant*, v. HARRY FOSTER *et al.*, *Respondents.*

STEPHEN F. LONE *et al.*, *Appellants*, v. HARRY FOSTER *et al.*, *Respondents.*

FRANK S. NAKANISHI, *Appellant*, v. RAYMOND W. GILL *et al.*, *Respondents.**

*Reported in 393 P. (2d) 635.

*Koenigsberg, Brown & Sinsheimer* and *William W. Brown,* for appellants.

*Hugh A. McClure* (of *Brethorst, Fowler, Bateman, Reed & McClure*), for respondent Foster.

*Flanders, Flanders & Trolson,* for respondent Waldo Rohnert Company.

*Knapp & Knapp,* for respondents Gill *et al.*

DENNEY, J.[†]—Three cases were consolidated for trial and on appeal. In each case the plaintiff sought damages for breach of contract, breach of warranty and negligence in the sale of lettuce seed.

Plaintiffs operated truck farms near Renton and Auburn, Washington. Plaintiff Nakanishi ordered a pure strain of lettuce seed known as "Great Lakes R-200" from defendants Raymond W. Gill, Cornelius P. Miller and Helen G. Miller, seed distributors, doing business in Portland, Oregon, as Gill Bros. Seed Company (hereinafter called Gill). Plaintiff Nakanishi placed another order for the same variety of seed with defendant Harry Foster, a seed distributor, doing business in Seattle as J. W. Dunn & Co. (hereinafter called Dunn). Plaintiffs Stephen F. Lone and Frank X. Lone, doing business as Lone Brothers, ordered the same variety of seed from Dunn. Both Dunn and Gill purchased the Great Lakes R-200 seed from defendant Waldo Rohnert Company (hereinafter called Rohnert), a California corporation whose principal place of business is Hollister, California. Rohnert is engaged in producing, processing and selling wholesale vegetable seed to seed dealers.

Rohnert delivered to Dunn and Gill a spurious mixture of seed containing some Great Lakes R-200, but in a larger part a variety known as "Imperial 101" which is adapted to use in hot and arid climates. The seed delivered to Dunn and Gill was invoiced as Great Lakes R-200 and the sacks containing the seed were labeled in the same manner. The spurious seed was, in turn, sold to plaintiffs in sacks labeled by Dunn and Gill as Great Lakes R-200.

An inspection of the seed would not reveal that it was spurious and mislabeled. Plaintiffs planted the seed. The mistake became apparent 2 weeks prior to harvest when about 75 per cent of the crop would not head out but went to seed, and was not marketable.

Rohnert's letterheads, invoices and contracts with Dunn and Gill contained language disclaiming all warranty ex-

---

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

cept that the seeds "are as described in the container to the extent of the purchase price." The tabs and labels attached to the sacks of seed delivered by Rohnert to Dunn and Gill read as follows:

"LETTUCE—New York Types
"Great Lakes, R. Strain, No. 200
"The Waldo Rohnert Company warrants to the extent of the purchase price that seeds sold are as described on the container, within recognized tolerances. Seller gives no other or further warranty, express or implied.

"WALDO ROHNERT Co. Wholesale Seed Growers
"Gilroy—California"

In filling Nakanishi's order, Gill made disclaimers of warranty on order blanks, invoices, tags and labels in similar language.

Dunn made disclaimers on its orders and invoices in the following language:

"Because conditions of use that are of critical importance are beyond our control, J. W. Dunn & Company makes no representation or warrant concerning the material described herein, and the buyer agrees that none shall be implied by law, except that the materials shall conform to the chemical description on the label."

Dunn's tags and labels attached to bags of seed delivered to plaintiffs read as follows:

"We exercise great care to have all seeds, bulbs, nursery stock, roots or plants pure and reliable, but give no warrant, expressed or implied in any respect, and will not be responsible for the crop. If not accepted on these terms, they must be returned at once."

During trial to a jury, the trial court resolved all issues of liability as a matter of law by instructing the jury that Dunn and Gill were liable to the plaintiffs and that Rohnert, in turn, was liable over to Dunn and Gill. The issue of damages was submitted to the jury, which brought in a verdict of $10,522.50 for Nakanishi against Dunn and in favor of Dunn over against Rohnert in the same amount. Nakanishi's verdict against Gill and by Gill over against

Rohnert was $6,296.25. Lone Brothers' verdict against Dunn and by Dunn over against Rohnert was $6,900.[1]

After hearing argument on motion for new trial, the trial court entered the following order:

"It Is Hereby Ordered, Adjudged and Decreed That a new trial be granted with respect to the consolidated actions on the basis that error in law was committed by the Court in instructing the jury to find for the plaintiff against the seed distributors instead of in favor of the plaintiff against the Rohnert Company, and in withdrawing from the jury's consideration whether the defendants, Harry Foster and Raymond W. Gill, should be dismissed from the case. A new trial is also ordered on the ground of excessive damages, resulting from passion or prejudice."

Plaintiffs appeal from this order and first contend that Dunn and Gill are liable as a matter of law for breach of contract in supplying a variety of seed different from that ordered, that any disclaimers of warranty came too late to become effective and Dunn and Gill cannot rely on them. The trial judge at first so ruled in submitting the case to the jury. This theory has been followed by several courts in this country. *Edgar v. Joseph Breck & Sons Corp.,* 172 Mass. 581, 52 N. E. 1083; *Corneli Seed Co. v. Ferguson,* 64 So. (2d) 162 (Fla. 1953); *Rocky Mountain Seed Co. v. Knorr,* 92 Colo. 320, 20 P. (2d) 304; *Smith v. Oscar H. Will & Co.,* 51 N. D. 357, 199 N. W. 861; *Ward v. Valker,* 44 N. D. 598, 176 N. W. 129; *Phelps v. Grand Rapids Growers, Inc.,* 341 Mich. 62, 67 N. W. (2d) 59; *Diepeveen v. Larry Vogt, Inc.,* 27 N. J. Super Ct. 254, 99 A. (2d) 329.

Many courts, including this one, have held that the contract of sale is not complete until delivery of the seed and the buyer accepts the disclaimers of warranty as a part of the contract of sale, and this is true even though the product is not true to name or label. *Pyle v. Eastern Seed Co.,* 145 Tex. 385, 198 S.W. (2d) 562; *Hall v. Mosteller,* 245 S.W. (2d) 338 (Tex. Civ. App.); *Couts v. Sperry Flour Co.,* 85 Cal. App. 156, 259 Pac. 108; *William A. Davis Co. v. Bertrand*

---

[1]At the commencement of the trial, plaintiffs announced that they were not seeking return of purchase price of the seed.

*Seed Co.,* 94 Cal. App. 281, 271 Pac. 123; *Hoover v. Utah Nursery Co.,* 79 Utah 12, 7 P. (2d) 270; *Gilbert v. Reuter Seed Co., Inc.,* 80 So. (2d) 567 (La. 1955); *Leonard Seed Co. v. Crary Canning Co.,* 147 Wis. 166, 132 N. W. 902; *Ross v. Northrup, King & Co.,* 156 Wis. 327, 144 N. W. 1124; *Kennedy v. Cornhusker Hybrid Co.,* 146 Neb. 230, 19 N. W. (2d) 51, 160 A.L.R. 351; *Lumbrazo v. Woodruff,* 256 N. Y. 92, 175 N. E. 525, 75 A.L.R. 1017; *Kibbe v. Woodruff,* 94 Conn. 443, 109 Atl. 169; *Herrera v. Johnson,* 140 Cal. App. (2d) 822, 295 P. (2d) 963; *Seattle Seed Co. v. Fujimori,* 79 Wash. 123, 139 Pac. 866; *Jolly v. C. E. Blackwell & Co.,* 122 Wash. 620, 211 Pac. 748.

The case of *Larson v. Inland Seed Co.,* 143 Wash. 557, 568, 255 Pac. 919, 62 A.L.R. 444, involved a seed supplier who filled an order for spring rye seed by shipping fall rye seed with printed tag attached to the bag disclaiming express and implied warranty as to description and other matters. This court held the supplier not liable for breach of implied warranty in failure of crop. The court said:

"Some contention is made in behalf of Larson rested upon the theory that the disclaimer of warranty was by the feed mills brought to his attention too late; that is, after the making of his contract for the purchase of the spring rye, invoking the law as announced in *Edgar v. Breck & Sons Corporation,* 172 Mass. 581, 52 N. E. 1083 [citing other cases]; holding, in substance, that a disclaimer of warranty made after the making of a sale contract, complete in itself, will not avail the vendor to relieve him from warranties, express or implied, embodied therein. . . . Larson finally simultaneously acquiesced in the sale contract between him and the feed mills, and in the manner of its performance, when he received the shipment of the rye at Loon Lake. That was, it seems to us, under the circumstances here shown, the ultimate making of the sale contract. . . ."

In the case of *Norway v. Root,* 58 Wn. (2d) 96, 361 P. (2d) 162, this court indicated it would closely examine the validity of disclaimers of implied warranties. That case involved the standard sale contracts of automobiles where the manufacturer and dealer expressly limit liability to replacement of defective parts. Such disclaimers were held

to be unconscionable and against public policy where the defective part resulted in injury to the purchaser of the automobile, in the case of *Henningsen v. Bloomfield Motors, Inc.,* 32 N. J. 358, 161 A. (2d) 69.

■ In the sale of seed, the dealer usually has no practical way to determine whether or not seed delivered by a wholesaler or processor is pure and according to label. The price of seed is small in comparison to the amount of consequential damage to the farmer in a failure of crop. Under these circumstances, the parties are left free to contract in making and accepting disclaimer of implied warranty.

This freedom to contract is confirmed by the Uniform Sales Act, RCW 63.04.720, which reads:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

Numerous cases in this state hold there can be no recovery for breach of implied warranty when the seller expressly disclaims such warranty. *McInnis & Co., Inc. v. Western Tractor & Equip. Co.,* 63 Wn. (2d) 652, 388 P. (2d) 562; *McDonald Credit Ser., Inc. v. Church,* 49 Wn. (2d) 400, 301 P. (2d) 1082; *Williamson v. Irwin,* 44 Wn. (2d) 373, 267 P. (2d) 702; *Lent v. McIntosh,* 29 Wn. (2d) 216, 186 P. (2d) 626; *Gibson v. California Spray-Chemical Corp.,* 29 Wn. (2d) 611, 188 P. (2d) 316; *Jones v. Mallon,* 3 Wn. (2d) 382, 101 P. (2d) 332; *Crandall Engineering Co. v. Winslow Marine R. & Shipbuilding Co.,* 188 Wash. 1, 61 P. (2d) 136, 106 A.L.R. 1457; *Marks v. Kucich,* 181 Wash. 73, 42 P. (2d) 16.

Absent proof of negligence of the distributor (and there was none here), the purchaser of seed may, by acceptance of a disclaimer of implied warranty, absolve the merchant from liability for consequential damage in the delivery of a variety of seed different from that ordered.

■ Contention is made that no contract of sale con-

taining a disclaimer of warranty was signed by plaintiffs and, further, that plaintiffs did not read the invoices and tags. However, plaintiffs had been doing business with Dunn and Gill for more than 15 years, during which time tags with the printed disclaimer of warranty were attached to all bags of seed and appeared on all orders and invoices, thus proving a custom in the sale of seed between plaintiffs and Dunn and Gill.

In *Gibson v. California Spray-Chemical Corp.*, 29 Wn. (2d) 611, 621, 188 P. (2d) 316, we said:

"The fact that he did not read the statement of disclaimer, if such is the fact, would not increase the liability of the company beyond what it would be had he read it. *Pimpinello v. Swift & Co.*, 253 N. Y. 159, 170 N. E. 530; *In re Stone's Estate*, 272 N. Y. 121, 5 N. E. (2d) 61; *Kennedy v. Cornhusker Hybrid Co.*, supra [146 Neb. 230, 19 N. W. (2d) 51]; 9 Wigmore on Evidence (3d ed.) 43, § 2415."

The case of *VanVliet v. Washington Nursery Co.*, 167 Wash. 115, 8 P. (2d) 961, is distinguishable because the seller's only disclaimer of warranty appeared on a written order which purchaser claimed was not signed or delivered. This court held that a jury verdict for the purchaser resolved the issue as to whether or not the disclaimer was ever disclosed to the purchaser.

Contention is made by plaintiffs that Dunn and Gill waived any right to rely on the disclaimers of warranty because of negotiations between the parties during which Dunn and Gill informed plaintiffs that Rohnert would participate in "some adjustments needed and would do what is the right thing to do." Nothing came of the negotiations. Dunn and Gill no doubt desired to satisfy valued customers and aid in making an adjustment through Rohnert but they did not, by their conduct, intentionally waive the defense of disclaimer of warranty by failing to mention it to the plaintiffs.

There can be no estoppel. Plaintiffs were not led to act or to refrain from taking action to their detriment. *Brear v. Washington State Highway Comm.*, 63 Wn. (2d) 815, 389 P. (2d) 276; *O'Connor v. Tesdale*, 34 Wn. (2d)

259, 209 P. (2d) 274. Delay in institution of this litigation alone is not sufficient to successfully invoke the doctrine of estoppel or waiver.

We conclude that the disclaimers of warranty were effective to absolve Dunn and Gill of liability.

The trial court found in his order granting a new trial that verdicts for plaintiffs should have been directed against Rohnert as to liability on the ground that Rohnert's negligence had been established as a matter of law. We agree.

In determining the liability of Rohnert to plaintiffs, we are not concerned with the disclaimers of warranty by Rohnert or Dunn and Gill. Plaintiffs made no contract of sale with Rohnert nor did the bags of seed delivered to plaintiffs bear any disclaimer of warranty by Rohnert. A disclaimer of warranty does not run with the thing itself. The case of *Jolly v. C. E. Blackwell & Co.*, 122 Wash. 620, 624, 211 Pac. 748, has this to say:

" . . . And since a specific warranty as to personal property cannot run with the thing itself, we see no reason why a disclaimer of warranty should run with the thing."

Laws of 1955, chapter 233, § 6, p. 944, in effect in 1958 and 1959, reads in part as follows:

"Labels for vegetable seeds shall give:
"(1) The name of the kind and variety of the seed;"

Section 7 of the same act provides in part:

"It shall be unlawful to sell, offer or expose for sale any agricultural or vegetable seed for seeding purposes within this state:
"  . . .
"(2) Not labeled as required herein, or having a false or misleading label; . . . " [2 & 3]

___

[2]These sections of the laws of 1955 were re-enacted in the Agricultural and Marketing Code of 1961 (Laws of 1961, chapter 11, p. 140, RCW 15.48.050 and RCW 15.48.060).

[3]Dunn and Gill did not violate the statute. Section 30 of the same chapter (Laws of 1955, chapter 233, p. 952, now RCW 15.48.220) provides:

"No person shall be subject to the penalties of this chapter for having sold, offered for sale or exposed for sale, agricultural or vegetable seeds which were incorrectly labeled or misrepresented as to kind,

■ This statute was enacted for the protection of the farmer. Rohnert's failure to comply in selling mislabeled seed in this state was negligence per se.

Five farmers, other than the plaintiffs, ordered Great Lakes R-200 from Dunn and Gill in 1959, all of whom had the same results as plaintiffs in failure of crop. Neither Dunn nor Gill had ever carried Imperial 101, the spurious seed. Unimpeached testimony showed beyond question that plaintiffs' orders were filled directly from the bags of seed delivered by Rohnert. Rohnert's letters to Dunn and Gill contained admissions of fault. Rohnert sent an agent to this state to investigate plaintiffs' complaint and in connection with such investigation, admitted that Rohnert had "goofed some place." Rohnert offered no explanation except that it did not know how it happened.

It was reasonably foreseeable by Rohnert that use of the spurious and mislabeled seed would create a risk to any farmer who used the seed for the purpose for which it was intended. Rohnert is charged with knowledge that the retailer had no practical method of distinguishing between Great Lakes R-200 and Imperial 101 and must have anticipated that the retailer would use the same label in sale to farmers.

The proof that Rohnert was negligent per se in selling seed having a false or misleading label with no explanation of how the mixture of the varieties of seed could have occurred other than by negligence, together with the undisputed proof tracing the spurious seed to plaintiffs, lead irresistibly to the conclusion that a reasonable mind must find that Rohnert was negligent, which was the proximate cause of plaintiffs' damage.

There is a growing number of exceptions to the doctrine that the manufacturer or processor cannot be reached by the consumer for consequential damage absent proof of

---

variety, type, or origin and which cannot be identified by examination, if he possesses an invoice or a declaration from a seller or grower within the jurisdiction of the courts of this state, giving kind, or kind and variety, or kind and type, and origin, if required, and if he has taken such other precautions necessary to insure the identity to be that stated."

privity of contract. *Freeman v. Navarre,* 47 Wn. (2d) 760, 289 P. (2d) 1015; *Dimoff v. Ernie Majer, Inc.,* 55 Wn. (2d) 385, 347 P. (2d) 1056.

The case of *Wise v. Hayes,* 58 Wn. (2d) 106, 109, 361 P. (2d) 171, requires special consideration. Plaintiff in that action sought consequential damages against the manufacturer in the use of an orchard spray delivered in mislabeled drums. In discussing the liability of the manufacturer, where the product was sold by one of its distributors, we said:

" . . . The rule that, if there is no contractual privity, there can be no warranty, has three exceptions: (1) Where the article causing the injury is of a noxious or dangerous nature, (2) where fraud or deceit has been shown on the part of the offending party, or (3) where the manufacturer has been negligent in some respect with reference to the sale or construction of an item not imminently dangerous. *Dimoff v. Ernie Majer, Inc.,* 55 Wn. (2d) 385, 389, 347 P. (2d) 1056 (1960).

"Respondent's pleadings were predicated upon the third exception to the rule. . . . Liability follows for violation of the duty that the appellant owed to the purchaser to label properly the products it offered for sale."

See, also, *Morrow v. Caloric Appliance Corp.,* 372 S. W. (2d) 41 (Mo. 1963).

The case of *Hoskins v. Jackson Grain Co.,* 63 So. (2d) 514, 515 (Fla. 1953), involved facts and a statute almost identical with the facts and statute here. In holding the wholesaler liable to the consumer for consequential damage for varietal difference between seed represented for sale and seed actually purchased, the court said:

"Where one violates a penal statute imposing upon him a duty designed to protect another he is negligent as a matter of law, therefore responsible for such damage as is proximately caused by his negligence. And, obviously, if a person negligently injures another liability cannot be affected by the fact that the two were not acquainted, or had not dealt directly with each other.

" . . .

"We think that when seed bearing a label showing a certain kind or variety are sold, and upon planting yield produce of a different kind or variety the wholesaler is

rendered liable for the negligence growing out of the 'false and misleading labeling.'

" . . .

"It seems to us it would be utterly unsound and unfair to hold that if a planter bought seed of a certain variety knowing that variety to be best suited for the soil of his farm and the climatic conditions prevailing there, and found later to his sorrow that a different variety in deficient amount or of poor quality was produced from seed having the same appearance as that he thought he had bought, he could not recover from the one who knew the origin and history of the seed, simply because the farmer got them direct from retailer who knew no more about them than he."

Some confusion may have arisen because of the necessity to discuss breach of warranty, breach of contract, and negligence in deciding some cases. We prefer to base our decision in this case on the broader ground that a manufacturer or processor who offers goods on the market to remote users must use reasonable care where there is a foreseeable risk of harm to the consumer if reasonable care is not used.

Rohnert's contention that the manufacturer or processor must answer only for consequential injury to person or destruction of property is not sound in the light of the decisions in *Freeman v. Navarre, supra,* involving cost of repair of a heating and ventilating system, and *Wise v. Hayes, supra,* involving damage for loss of crop.

The trial court granted a new trial on all issues because of his belief that the form of verdicts submitted to the jury did not permit entry of judgments for plaintiffs directly against Rohnert. We find no impediment in doing so, in view of our holding that plaintiffs are entitled to recover against Rohnert as a matter of law. The measure of damage was plaintiffs' loss of profit in the 1959 lettuce crop due to spurious seed. Damage was the same, regardless of who was responsible for the loss, Rohnert, Dunn and Gill, or both.

Rohnert challenged the jurisdiction of the courts of this state. Rohnert solicited orders through salesmen,

which resulted in a continuous flow of business into this state. Rohnert sent agents into this state to contact farmers, relating to complaints. It contracted with an agent on a commission basis to procure supplies of seed from growers in eastern Washington. This was sufficient to warrant the trial court's conclusion that Rohnert was engaged in business in this state of sufficient moment to make it subject to the jurisdiction of the courts of this state under the tests announced in *International Shoe Co. v. State,* 22 Wn. (2d) 146, 154 P. (2d) 801, 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

■ In granting the motion for new trial on the "ground of excessive damages resulting from passion or prejudice", the trial court gave no reason for so doing other than his conclusion. Under Rule of Pleading, Practice and Procedure 59.04W, we cannot assume that he was influenced by conditions existing or circumstances occurring during the trial which could not be made a part of the record and we must assume that the justification, if any, for the action taken is to be found in the record. *Johnson v. Howard,* 45 Wn. (2d) 433, 275 P. (2d) 736; *Greenwood v. Bogue,* 53 Wn. (2d) 795, 337 P. (2d) 708; *Durkan v. Leicester,* 62 Wn. (2d) 77, 381 P. (2d) 127.

The jury was correctly instructed on the measure of damage as the market value of crops which would have been raised that season had the seed been as ordered, less the expense of raising, harvesting, and marketing the crop, together with the salvage of the crop made by the plaintiffs through the sale of any part of the crop.

Plaintiffs offered substantial evidence to prove all of these factors. Respondents offered no testimony questioning the accuracy or reasonableness of the evidence produced by plaintiffs. If plaintiffs' evidence as to crop, price and demand for local lettuce in 1959 was erroneous, testimony to the contrary was readily available to respondents. They offered none. Respondents chose to rely entirely upon income tax returns of plaintiff Nakanishi for 4 years previous to 1959. Such returns showed a loss in some years and a profit in other years, much less than the damages

claimed. Substantial evidence was adduced, however, that a truck farmer may incur a loss one year and a profit the next and that the price and demand for lettuce fluctuates from year to year and, in turn, the income of the farmer fluctuates in equal degree. The jury evidently believed that 1959 was a good year for the local lettuce grower. The evidence justifies this conclusion.

Some suggestion is made by respondents that the trial judge may have been influenced by questions propounded to a juror, who was engaged in the insurance business, relative to whether or not such juror would be influenced because of her occupation. Insurance was also mentioned inadvertently by a witness in testifying to a conversation with one of Rohnert's agents. In both instances, motions for mistrial were denied. If the trial court was influenced by these incidents, he could have said so or granted a new trial on the ground of "misconduct of prevailing party." In the absence of a finding, we must assume that the trial court did not regard the mention of insurance as important or controlling.

■ The verdicts of the jury in the aggregate were about $9,000 less than the total damages testified to by plaintiffs, and were well within the evidence. We must find that there was an abuse of discretion in granting the motion for new trial for excessive damages. *Coleman v. George,* 62 Wn. (2d) 840, 384 P. (2d) 871; *Johnson v. Howard, supra; Greenwood v. Bogue, supra.*

The judgment of the trial court is reversed with instructions to enter judgment as follows:

1. In King County Cause No. 560036, that defendant Harry Foster, doing business as J. W. Dunn & Company, be dismissed from the action and that plaintiff Frank S. Nakanishi recover judgment against Waldo Rohnert Company in the sum of $10,522.50;

2. In King County Cause No. 564984, that Harry Foster, doing business as J. W. Dunn & Company, be dismissed from the action and that Stephen F. Lone and Frank X. Lone, doing business as Lone Brothers, have judgment against Waldo Rohnert Company in the sum of $6,900;

3. In King County Cause No. 560035, that Raymond W. Gill, Cornelius P. Miller and Helen G. Miller, partners, doing business as Gill Bros. Seed Company, be dismissed from the action and that the plaintiff Frank S. Nakanishi recover against Waldo Rohnert Company in the sum of $6,296.25.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

August 27, 1964. Petition for rehearing denied.